358 A.2d 23.

THOMAS CAMARA *et al. vs.* CITY OF WARWICK *et al.*

MAY 17, 1976.

PRESENT: Paolino, Acting C. J., Joslin, Kelleher and Doris, JJ.

Doris, J. The plaintiffs brought this action in the Superior Court to declare null and void an amendment to the zoning ordinance of the city of Warwick and to enjoin the issuance of any building permit sought in reliance on the amendment. A justice of the Superior Court heard the case and entered judgment denying and dismissing the prayers of the plaintiffs. The case is before this court on the plaintiffs' appeal from that judgment.

The challenged amendment, ordinance No. 0-74-7, would amend the zoning ordinance of the city of Warwick by changing the classification of Lot No. 6 on Tax Assessor's Plat No. 239 from Residence A-15 to Limited Business-Multi Family. This change would allow the erection of multi-unit apartments on Lot No. 6 where now only single detached dwelling units may be built. Warwick Zoning Ordinance §§5.3.2. and 6.2.3.1. The record discloses that Woloohojian Realty Corporation, owner of Lot No. 6, had petitioned for the zoning ordinance change on December 11, 1973. The Warwick City Council gave No. 0-74-7 final passage on February 19, 1974, and the Mayor of the city of Warwick approved it on February 28, 1974.

The plaintiffs' complaint for declaratory judgment and

injunctive relief was filed in the Superior Court on February 27, 1974. On March 6, 1974, a Superior Court justice issued a restraining order enjoining the building inspector from issuing a building permit. This order remained in effect until September 16, 1974, when the judgment appealed from was entered. The decision supporting that judgment stated that defendant, Woloohojian Realty Corporation, at that time had a building permit from the city of Warwick for the erection of some 400 apartment units on Lot No. 6. On December 12, 1974, a Superior Court justice ordered the restraining order reinstated pending the outcome of this appeal. On March 21, 1974, a Superior Court justice had ordered plaintiffs to file a surety bond in the sum of $10,000 pursuant to the provisions of Super. R. Civ. P. 65(c). The plaintiffs filed such a bond on March 27, 1974, but assessment of damages following the September 16 judgment was postponed by reinstatement of the restraining order on December 12.

The plaintiffs, Thomas Camara et ux., own a parcel of land abutting Lot No. 6. The plaintiffs, Harold C. Miner, Jr., et ux. and Thomas F. Flynn, Jr., et ux., own parcels of land near Lot No. 6. The plaintiff, Cowesett Improvement Association, is a corporation organized to represent the interests of the named plaintiffs and of other landowners affected by No. 0-74-7. The defendant, William Costello, is the building inspector for the city of Warwick. Woloohojian Realty Corporation was joined as a party defendant on March 19, 1974, when a Superior Court justice granted its motion to intervene pursuant to the provisions of Super. R. Civ. P. 20.2.

Lot No. 6 has roughly a rectangular shape covering 33.5 acres, of which approximately 3.2 acres is under water. Along its 2235-foot eastern edge is Hardig Road, which runs north and south and has a paved width of 20 feet or one and one-half lanes. Across Hardig Road for almost

this entire stretch are high power electric lines of the Narragansett Electric Company. This property is zoned Residence A-15. Beyond it and also running north and south is U. S. Interstate 95, Rhode Island's major highway. Bordering Lot No. 6 on its 555-foot southern side is Cowesett Road, which runs east and west and is about two lanes wide. Thus, the southeast corner of Lot No. 6 is formed by the intersection of Hardig Road and Cowesett Road. Across Cowesett Road is a power station of the Narragansett Electric Company on land zoned Residence A-40. To the west of the power station on Cowesett Road are the Flynns' and Miners' homes, also zoned Residence A-40. The 1930-foot western boundary of Lot No. 6 is shared by the Little Rhody Beagle Club's 95-acre parcel, zoned Residence A-15, and its access road from Cowesett Road. The club is an existing nonconforming use. Across this access road is a vacant lot that belongs to the Miners and is zoned Residence A-15. Adjacent to the 826-foot northern edge of Lot No. 6 is the Camaras' parcel, which is 200 feet wide and fronts on Hardig Road. On the other side of the Camaras' lot is the Royal Crest Apartment complex located on a 71.5 acre parcel, also zoned Residence A-15. The Warwick Zoning Board of Review granted an exception to permit the erection of some 480 apartment units on this parcel. The Royal Crest Apartments face north on Route 117, also known as Centreville Road, a two-lane road which runs east and west. Just beyond Hardig Road, Route 117 expands to four lanes with ramps leading onto Route 95. Since there is no access to Route 95 from Cowesett Road, the shortest path to Route 95 from Lot No. 6 is north on Hardig Road and east on Route 117.

On appeal to this court plaintiffs claim that the trial justice erred in upholding the validity of No. 0-74-7 despite alleged violations of the Fresh Water Wetlands

400

Act, G. L. 1956, §2-1-18 et seq., the Warwick City Council Rules, the Warwick Zoning Ordinance, and the enabling act, G. L. 1956 (1970 Reenactment) chapter 24 of title 45. The plaintiffs also argue that the Superior Court justice erred in requiring plaintiffs to post a $10,000 surety bond. The plaintiffs urge this court to reverse the judgment below, declare No. 0-74-7 null and void, and vacate the surety bond order. For the reasons that follow, plaintiffs' claims must fail.

The plaintiffs first claim that the Warwick City Council passed No. 0-74-7 without complying with the provisions of its own Rule 15(b). This rule requires the city council to follow certain procedures for "[a]ll applications for approval to alter Wetlands pursuant to Chapter 2-1 of the General Laws of Rhode Island, as amended * * *." However, the record does not disclose that any such application has ever been made for Lot No. 6. On December 19, 1973, Woloohojian Realty Corporation did request the Department of Natural Resources to *determine whether Lot No. 6 was affected by the Fresh Water Wetlands Act.* This request was made in accordance with the following provision of §2-1-22: "Prior to the application [for approval to alter a wetland], a request may be made for preliminary determination as to whether or not the wetlands act applies." Such a request for preliminary determination of applicability is a step precedent to and distinct from the application for approval to actually alter a wetland, *J. M. Mills, Inc.* v. *Murphy,* 116 R. I. 54, 78, 352 A.2d 661. 674 (1976) (Kelleher, J., dissenting). Woloohojian Realty Corporation never took the second step which would have activated the procedures of Warwick City Council Rule 15(b). We therefore agree with the trial justice that No. 0-74-7 was not null and void due to defendants' failure to comply with Rule 15(b).

The plaintiffs next claim that No. 0-74-7 was passed in

violation of Warwick City Council Rule 15(d). This rule says that "[n]o action shall be taken by the City Council on applications involving land use as may be required by statute or ordinance unless the applicant shall have first complied with General Laws 1956, Section 2-1-1 et seq. as amended (Wetlands Act so-called) approved January 15, 1974 * * *." Rule 15(d) took effect January 15, 1974, well before the city council acted on the rezoning application by Woloohojian Realty Corporation. However, it is our view that in passing No. 0-74-7 the Warwick City Council did not violate its own Rule 15(d).

In response to the request by Woloohojian Realty Corporation on December 19, 1973, for preliminary determination of the applicability of the Fresh Water Wetlands Act to Lot No. 6, the Department of Natural Resources issued two contradictory letters. Both were dated January 18, 1974, but one stated that none of Lot No. 6 was wetlands while the other declared that certain portions of the land indeed were wetlands. However, the record also discloses that only the letter holding Lot No. 6 not to be wetlands in any part was before the Warwick City Council prior to its approval of No. 0-74-7. Under these circumstances, we agree with the trial justice that No. 0-74-7 is not invalidated on account of noncompliance by the Warwick City Council with its own Rule 15(d).

As a result of our discussion of Rules 15(b) and 15(d), we conclude that the Fresh Water Wetlands Act cannot affect the validity of No. 0-74-7. Any allegation of violation of that Act is a separate matter that has no place in this appeal.

The plaintiffs next claim that the notice regarding No. 0-74-7 was deficient in that it alerted the public to a proposed reclassification of a particular lot only rather than to a proposed amendment to the Warwick Zoning Ordinance. While the exact law supposedly violated has not

been brought to our attention, we conclude that the express language of the notice[1] was sufficient to inform the reader that the amendment to the Warwick Zoning Ordinance was contemplated. Nothing in the record before us gives us cause to disagree with the trial justice's finding that "[t]he City Council of Warwick complied with all the requirements of the law, statute or ordinance, concerning the petition, notice and hearing for the change of zoning."

More substantively, plaintiffs claim that No. 0-74-7 violates existing provisions of the Warwick Zoning Ordinance in two ways: (1) by changing the classification of Lot No. 6 from Residence A-15 to Limited Business-Multi Family directly without first classifying it Limited Business, as seems to be required by §§6.2.1 and 6.2.3.1 of the Warwick Zoning Ordinance;[2] and (2) by failing to meet the minimum road access requirements for land changed to a Limited Business-Multi Family District, as provided

---

[1]The notice, dated December 26, 1973, refers to the proposed "change of Zoning Lot No. 6 * * * from Residence A-15 to Limited Business-Multi-Family District * * *."

[2]The Warwick Zoning Ordinance reads in pertinent part:

"6.2.1. *Limited Business.* Apartments containing ten (10) units or less are permitted only in Limited Business Districts * * *.

\* \* \*

\* \* \*

"6.2.3.1. Apartments containing more than ten (10) units are permitted only in Limited Business-Multi Family Districts which are subdistricts within Limited Business provided that the area may be changed by the city council to a Limited Business-Multi Family District by amendment to this ordinance.

"Any area which would be changed to a Limited Business-Multi Family District shall be within Limited Business * * *."

for in §6.2.3.1.[3] Though the trial justice ruled on the
merits of these two contentions,[4] we need not review his
rulings because we endorse the trial justice's more power-
ful holding that a provision of the existing zoning ordi-
nances must yield to a subsequent inconsistent amend-
ment. *Surber* v. *Pearce,* 97 R. I. 40, 44, 195 A.2d 541, 543
(1963); *Opinion to the Governor,* 78 R. I. 144, 149, 80
A.2d 165, 168 (1951). To rule that existing provisions of
the Warwick Zoning Ordinance abridge the power of the
Warwick City Council to later pass amendments such as
No. 0-74-7 would sanction an unconstitutional interfer-
ence with the legislative powers conferred on the General
Assembly by R. I. Const. art. IV, §§2 and 10, and in turn
delegated to the city and town councils by the enabling
act. *Opinion to the Governor,* 112 R. I. 151, 157, 308 A.2d
809, 812 (1973); *Advisory Opinion to the Senate,* 108
R. I. 302, 304, 275 A.2d 256, 257 (1971); *Opinion to the
Governor,* 97 R. I. 200, 205, 196 A.2d 829, 832 (1964);
*Gorham* v. *Robinson,* 57 R. I. 1, 20, 186 A. 832, 842-43
(1936). We therefore hold that the trial justice was cor-
rect in ruling that, far from No. 0-74-7's being invalid
for violating existing provisions of the Warwick Zoning

---

[3]Section 6.2.3.1, of the Warwick Zoning Ordinance reads in pertinent
part:
  "Multi-family dwellings must be located with respect to major streets
  and highways so as to provide direct access to such dwellings without
  creating traffic along minor streets in residential neighborhoods outside
  Limited Business Districts.
  "Principal vehicular access to multi-family dwellings shall be from
  major streets."

[4]The trial justice agreed with plaintiffs that the reclassification provi-
sions say that land may be changed to a Limited-Business-Multi Family
District only if it is presently in a Limited Business District, but he
agreed with defendants in finding that he was "not able to determine that
Hardig Road is not a 'major highway'" for the purposes of Warwick
Zoning Ordinance §6.2.3.1.

Ordinance, the zoning ordinance is repealed to the extent that it conflicts with this amendment.

It follows from this holding that the trial justice did not commit error in excluding testimony that sought to prove how No. 0-74-7 would violate existing city ordinances.

Perhaps plaintiffs' most substantial claim is that No. 0-74-7 violates the provisions of the enabling act, and in particular G. L. 1956 (1970 Reenactment) §45-24-3.[5] It cannot be disputed that the zoning amendment is a legislative act. *Willey* v. *Town Council*, 106 R. I. 544, 557, 261 A.2d 627, 634 (1970); *R. I. Home Builders, Inc.* v. *Budlong Rose Co.*, 77 R. I. 147, 151, 74 A.2d 237, 239 (1950). Nor is there any doubt that, as such, the amendment can go no further than the enabling act. *Cianciarulo* v. *Tarro*, 92 R. I. 352, 358, 168 A.2d 719, 722 (1961); *R. I. Home Builders, Inc.* v. *Budlong Rose Co.*, *supra.*

It is equally true that the requirement that a zoning ordinance "be made in accordance with a comprehensive plan" is mandatory, and that strict compliance therewith by the local legislatures is necessary. The remaining provisions of §45-24-3 are directory only, and broad discretion in accomplishing them is left to the local legislatures. *Willey* v. *Town Council*, *supra* at 557, 261 A.2d at 634;

---

[5]General Laws 1956 (1970 Reenactment) §45-24-3 reads as follows:

"General purposes of ordinances.—Such regulations shall be made in accordance with a comprehensive plan and designed to lessen congestion in the streets; to secure safety from fire, panic and other dangers; to promote the public health and the general welfare; to provide adequate light and air; to prevent the overcrowding of land; to avoid undue concentration of population; to facilitate the adequate provision of transportation, water, sewerage, schools, parks and other public requirements. Such regulations shall be made with reasonable consideration, among other things, to the character of the district and its peculiar suitability for particular uses, and with a view to conserving the value of buildings and encouraging the most apprpriate use of land throughout such town or municipality."

*Cianciarulo* v. *Tarro, supra* at 358-59, 168 A.2d at 722-23. Absent some extraordinary circumstance or condition, the trial justice need not consider allegations of noncompliance with these directory provisions. *Hadley* v. *Harold Realty Co.*, 97 R. I. 403, 412-13, 198 A.2d 149, 154 (1964); *Cianciarulo* v. *Tarro, supra* at 361, 168 A.2d at 724. For example, the provision that the zoning ordinances be "designed to lessen congestion in the streets" is not violated by a simple increase in traffic, but it may be violated if the traffic increase results in intensified congestion or a hazard. *Thomson Methodist Church* v. *Zoning Bd. of Review,* 99 R. I. 675, 682, 210 A.2d 138, 142 (1965). There is nothing in the record before us which amounts to an extraordinary circumstance or condition requiring consideration of the directory provisions of §45-24-3. It follows that the trial justice committed no error in ruling that No. 0-74-7 did not violate these directory provisions of §45-24-3.

We next consider plaintiffs' claim that No. 0-74-7 was not "made in accordance with a comprehensive plan" as §45-24-3 requires. The record discloses that the city of Warwick has land-use studies, guides, and ordinances, but that it has not yet adopted a "comprehensive plan," so-called, pursuant to the provisions of §45-22-6.[6] Absent such a clearly labeled document, a municipality's "comprehensive plan" is its scheme or formula of zoning which,

---

[6]General Laws 1956 (1970 Reenactment) §45-22-6 reads in pertinent part:

"A planning board or commission shall prepare a comprehensive plan for the development of the city or town. * * *
* * *

"Following adoption of a comprehensive plan or any element thereof by the planning board or commission and upon recommendation of said board or commission, the city or town council may, following a public hearing, adopt said comprehensive plan or element thereof as a statement of city or town policy and a guide for community action in matters relating to community development."

as an exercise of the police power of the state, is valid only as it reasonably relates the regulation and restriction of land uses and the establishment of districts therefor to the health, safety, and welfare of the public. *Hadley* v. *Harold Realty Co., supra* at 408, 198 A.2d at 152. Thus in this situation the test for compliance with the comprehensive plan requirement is whether the recent enactment bears a reasonable relationship to the public health, safety, and welfare. *Willey* v. *Town Council, supra* at 559, 261 A.2d at 635; *Hadley* v. *Harold Realty Co., supra* at 409, 198 A.2d at 153. Accordingly, the enabling act contemplates that such a comprehensive plan may from time to time be altered by amending the zoning ordinance, provided that the amendment bears a reasonable relationship to the public health, safety, and welfare. *Hadley* v. *Harold Realty Co., supra* at 408, 198 A.2d at 152; *Cianciarulo* v. *Tarro, supra* at 360, 168 A.2d at 723.[7] Such an amendment may be proper even though not precipitated by external factors such as change in the character of the surrounding neighborhood. *Id.* at 363, 168 A.2d at 724-25.

In deciding whether an amendment does bear a reasonable relationship to the public health, safety, and welfare, a trial justice may properly consider as evidence local planning reports and guidelines that analyze and evaluate land use in the municipality. The trial justice in the instant case did just that, taking into consideration such guides as the "Apartment Study" and land use intensity ratios.

In reviewing the trial justice's ruling that No. 0-74-7 is in accord with Warwick's comprehensive plan, we are

---

[7]The plaintiffs label No. 0-74-7 an example of "spot zoning," but this approach is of no analytical use because so-called spot zoning may be valid or invalid depending on the facts of the particular case. *Carpionato* v. *Town Council*, 104 R. I. 490, 494-95, 244 A.2d 861, 863 (1968); *D'Angelo* v. *Knights of Columbus Bldg. Ass'n*, 89 R. I. 76, 86, 151 A.2d 495, 500 (1959).

mindful of the twofold burden plaintiffs must sustain. First, since No. 0-74-7 is a legislative act, there is an initial presumption that it is valid. *Willey* v. *Town Council, supra; Carpionato* v. *Town Council,* 104 R. I. 490, 495, 244 A.2d 861, 863 (1968); *City of Providence* v. *Stephens,* 47 R. I. 387, 133 A. 614 (1926). This means also that the amendment is presumed to have been made "in accordance with a comprehensive plan." *D'Angelo* v. *Knights of Columbus Bldg. Ass'n,* 89 R. I. 76, 83, 151 A.2d 495, 498-99 (1959). Hence plaintiffs, as challengers of the amendment, have the burden of proving that it was not made in accordance with a comprehensive plan. *Willey* v. *Town Council, supra; Cianciarulo* v. *Tarro, supra.* Second, the settled rule when we review requires that in order to reverse the judgment below we must find that the trial justice misapplied the law, or that his findings were clearly wrong, or that he misconceived or overlooked material evidence. *Toole* v. *May-Day Realty Corp.,* 101 R. I. 379, 385, 223 A.2d 545, 548 (1966); *Town & Country Mobile Homes, Inc.* v. *Inspector of Bldgs.,* 93 R. I. 383, 387, 175 A.2d 556, 558 (1961).

Our preceding discussion clearly shows that we believe the trial justice applied the correct law in this case. As to the facts, the trial justice in his opinion stated, "It is difficult to envision a piece of land which would be more suitable for apartment development than the W. [Woloohojian] land [Lot No. 6]."[8] We do not share the trial justice's enthusiasm, especially in light of the narrowness of the paved portion of Hardig Road, the only direct path

---

[8]It should be noted that in considering a petition to rezone certain land, a city council should not restrict its vision to any required preliminary project plan, *e.g.,* Warwick Zoning Ordinance §6.2.3.1. *Oury* v. *Greany,* 107 R. I. 427, 432, 267 A.2d 700, 702 (1970). Accordingly, in the instant appeal we are less concerned with the details of Woloohojian Realty Corporation's plan for Lot No. 6 than with the general reclassification of the land from Residence A-15 to Limited Business-Multi Family District.

to Route 95. Nevertheless we see no evidence in the record before us which compels us to reverse the decision of the trial justice. Three facts in particular support this conclusion. First, much of the area surrounding Lot No. 6, specifically the Little Rhody Beagle Club, the Royal Crest Apartment complex, and the Narragansett Electric Company property, is not occupied by single-family homes, so the reclassification of Lot No. 6 would not disrupt a homogeneous neighborhood. Second, the presence of the high power electric lines on the Narragansett Electric Company property effectively limits residential use of Hardig Road to its western side, so the area is not apt to become much more densely populated in the future. And third, Woloohojian Realty Corporation's preliminary project plan for Lot No. 6 falls well within the land use intensity ratios established by Warwick Zoning Ordinance §6.2.3.1. For these reasons we cannot say that the trial justice was clearly wrong.

Finally, the plaintiffs claim that the trial justice abused his discretion in ordering them to file a $10,000 surety bond. The trial justice's authority to order the giving of security is governed by Super. R. Civ. P. 65(c).[9] Because of the size of the apartment development contemplated and the delay in its construction incurred by the preliminary injunction, we cannot agree with the plaintiffs that the trial justice abused his discretion under Super. R. Civ. P. 65(c).

The plaintiffs' appeal is denied and dismissed, the judgment appealed from is affirmed, and the cause is remanded to the Superior Court.

---

[9]Super. R. Civ. P. 65(c) reads in pertinent part:

"(c) Security. Upon the issuance of a restraining order or preliminary injunction the court may order the giving of security by the applicant, *in such sum as the court deems proper,* for the payment of such costs and damages as may be incurred or suffered by any party who is found to have been wrongfully enjoined or restrained." (Emphasis added.)

Mr. Chief Justice Roberts was present at oral argument but retired prior to consideration or decision of this case.

*Breslin, Sweeney & Gordon, David F. Sweeney,* for plaintiffs.

*William J. Toohey,* City Solicitor, *Howard R. Haronian, Aram A. Arabian,* for defendants.