INTERNATIONAL BROTHERHOOD
OF ELECTRICAL WORKERS,
LOCAL NO. 99

v.

UNITED PACIFIC
INSURANCE CO. et al.

No. 89–143–Appeal.

Supreme Court of Rhode Island.

April 19, 1990.

Eleanor W. Brown and Richard A. Skolnik, Lipsey & Skolnik, Ltd., Providence, for plaintiff.

Joseph J. Reale, Jr., Visconti & Petrocelli, Ltd., Providence, for defendants.

## OPINION

KELLEHER, Justice.

This is an appeal from a judgment entered in the Superior Court in which a trial justice ruled in favor of the defendants, United Pacific Insurance Company (United) and Alfred Calcagni & Son, Inc. (Calcagni), in an action brought by the plaintiff, International Brotherhood of Electrical Workers, Local No. 99 (IBEW). The IBEW sought payment of fringe benefits that it alleged had not been paid to certain of its members who had worked on a particular construction project. The facts of the dispute are as follows.

Calcagni, the general contractor of a project known as the Villa Excelsior job, entered into a subcontract with AAA Electric Company (AAA) to provide electrical work at the project. Pursuant to a separate agreement, IBEW supplied labor to AAA for the Excelsior job. The IBEW-AAA agreement, in effect from June 1, 1982, until May 31, 1984, provided that AAA was to pay fringe benefits equaling 29 percent of the gross wages earned by IBEW members working on the job. Calcagni, pursuant to its contract with the owner of the project, provided a labor-and-material payment bond issued by United that was to guarantee payment for work,

labor, and services provided to the project. Hanover Insurance Company (Hanover), a third-party defendant in the instant action, had issued a fringe-benefit bond that named AAA as principal and Hanover as a surety. This bond was to guarantee payment of all benefits due and owing as a result of labor provided by IBEW. It was alleged, however, that AAA, which went into receivership during the course of the Excelsior project, failed to pay fringe benefits during the period April through October 1983 and January 1984.

In February of 1984 IBEW instituted this action against Calcagni and its insurer, United; AAA was brought in as a third-party defendant, and it in turn brought in its insurer, Hanover. Shortly thereafter, IBEW brought a separate action against AAA and Hanover. Both the third-party action against AAA and Hanover and the separate IBEW action against AAA and Hanover were settled and dismissed with prejudice before the instant matter came to trial.

This action finally came to trial in January of 1989. At trial IBEW sought to introduce into evidence three exhibits in support of its claim for the fringe benefits due and owing. Argument was heard on the admissibility of each of the exhibits. The trial justice decided to admit all three with the caveat that each would be given appropriate weight and credibility.

Then, at the close of IBEW's case and again at the close of all evidence, Calcagni and United moved for a directed verdict based upon IBEW's failure to prove its claim and damages. United and Calcagni argued that all three exhibits were hearsay and each failed to qualify as an exception to the hearsay rule. The trial justice reserved decision on the motion until the conclusion of the trial. At that time, the trial justice indicated that the exhibits were "suspect." He continued:

"The plaintiff has the burden of proving by a fair preponderance of the evidence that the defendants are indebted to it, and I find it very difficult, in looking at all these records, to conclude there is any claim that I can arrive at other than by conjecture or speculation. Mr. DeCiutiis testified the sum due was $17,000 plus. He did not indicate which hours he, him self, worked at Villa Excelsior, much less what the others worked, where, and other than to say each of these workers at one point worked at Villa Excelsior. He could not identify the particular period or the hours worked.

"For that reason I find that the plaintiff has failed to prove by a fair preponderance of the evidence a specific claim."

Argument had also been heard on the issue of whether IBEW should have been estopped from bringing its claim against Calcagni and United because of its failure to notify Calcagni and United of the claim prior to instituting court action. The trial justice, although agreeing with IBEW that G.L.1956 (1984 Reenactment) § 34–28–30 has abrogated any notice requirement, held that "the plaintiff is estopped from making any claim on the basis of their lack of doing something when they had a clear obligation to do something. For that reason, also, I will enter a judgment for the defendant."

There are two issues now raised on appeal. The first concerns the trial justice's treatment of IBEW's exhibit Nos. 5, 8, and 9. The second pertains to the trial justice's ruling that IBEW was estopped from bringing its claim because of its failure to notify Calcagni and United of the outstanding debt.

IBEW argues that (1) the trial justice violated the standards set forth in Rule 803(6) of the Rhode Island Rules of Evidence when he gave no credence to IBEW's exhibit Nos. 5, 8, and 9, (2) the trial justice erred when he imposed upon IBEW a standard of notice that does not exist at law, and (3) the trial justice erred in finding IBEW to have been estopped from bringing its claim against Calcagni and United.

Calcagni and United argue that (1) the trial justice properly evaluated IBEW's exhibit Nos. 5, 8, and 9 as hearsay and without credibility, and (2) IBEW is estopped from making its claim for benefits because

of its failure to act in a timely manner. We shall now address these issues.

Rule 803 reads, in pertinent part, as follows:

"The following are not excluded by the hearsay rule, even though the declarant is available as a witness:

(6) *Records of Regularly Conducted Activity.* A memorandum, report, record, or data compilation, in any form, of acts, events, conditions, opinions or diagnoses, made at or near the time by, or from information transmitted by, another person with knowledge, if kept in the course of a regularly conducted business activity, and if it was the regular practice of that business activity to make the memorandum, report,.record, or da ta compilation, all as shown by the testimony of the custodian or other qualified witness, unless the source of information or the method or circumstances of preparation indicate lack of trustworthiness. The term 'business' as used in this paragraph includes business, institution, association, profession, occupation, and calling of every kind, whether or not conducted for profit."

The IBEW contends that exhibit Nos. 5, 8, and 9 fulfill all the requirements of the rule. A review of each exhibit is necessary.

The IBEW's exhibit No. 5 consisted of certified payroll reports completed by AAA. Testimony was given by a Calcagni employee, John Barba (Barba), whose duties included management and oversight of the financial administration of the Calcagni corporation. Barba indicated that these certified payroll records of AAA's were kept in the ordinary course of business by Calcagni in a file folder labeled "AAA Electric Company, Villa Excelsior, Providence, Rhode Island, Payroll." He further testified that these records were authored by AAA and submitted by AAA to Calcagni on a weekly basis. Barba also indicated that Calcagni relied upon the information contained in the file and submitted it to the project owner as a matter of practice.

However, the trial justice, in reaching his decision, commented on exhibit No. 5 as follows: "The only difficulty I find with that is that these were not records kept—they were kept in the sense they were stored, but they were not maintained or prepared by Calcagni, even though they were in their files, which leaves them a little suspect."

The IBEW's exhibit No. 9 consisted of payroll reports that had been submitted monthly from AAA to IBEW for the period April 1983 through November 1983. Carmine Gelsomino (Gelsomino), business manager of IBEW, Local No. 99, testified regarding this exhibit. He indicated that the reports contained the names of IBEW employees working on AAA projects, the hours worked, the percentage of benefits, the union dues, and other additional information.

The trial justice, however, remarked, "Exhibit nine was introduced, but there is no indication who prepared that, there are no signatures on it, or when it was prepared."

Lastly IBEW's exhibit No. 8 was a worksheet that apparently consisted of compilations and summarizations made by IBEW of the reports contained in exhibit No. 9. Gelsomino testified that the union office created and maintained this worksheet in the ordinary course of business and that the worksheet contained information for the period April 3, 1983, through October 30, 1983. He further testified that the worksheet contained information pertaining solely to AAA projects and included various details such as employee names, social security numbers, hours worked, gross pay, and amounts due and owing to fringe-benefit funds.

Concerning this exhibit, the trial justice stated:

"There is no indication who prepared this form or when it was prepared, but somehow it was probably prepared by using portions of Exhibit five, as well as portions—in fact, it had to be prepared by using a great deal of information from Exhibit nine.

"The difficulty I have with all of those documents is that neither Exhibits five nor nine say anything about employment in October of 1983 or January of 1984, so that Exhibit No. 8 is somewhat suspect as to the source of the information to make the compilation."

Rule 803(6) represents reform efforts concerned with "relaxing the requirement of producing as witnesses, or accounting for the nonproduction of, all participants in the process of gathering, transmitting, and recording information which the common law had evolved as a burdensome and crippling aspect of using records of this type." Rule 803(6) Advisory Committee's Note. Furthermore, it has been said that "the rule proceeds from the base that records made in the course of a regularly conducted activity will be taken as admissible." *Id.*

It is with these concerns in mind that we find error in the trial justice's determinations pertaining to the three exhibits at issue. It is our belief that each of the exhibits was admissible as an exception to the hearsay rule under Rule 803(6).

■ The IBEW has directed this court to a decision of the Second Circuit Court of Appeals, *Saks International, Inc. v. M/V Export Champion*, 817 F.2d 1011 (2d Cir. 1987), in which the court had cause to address the admission of records under Rule 803(6) of the Federal Rules of Evidence.[1] Therein the court stated:

"The principal precondition to admission of documents as business records pursuant to Fed.R.Evid. 803(6) is that the records have sufficient indicia of trustworthiness to be considered reliable. * * * Documents may properly be admitted under this Rule as business records even though they are the records of a business entity other than one of the parties * * * and even though the foundation for their receipt is laid by a witness who is not an employee of the entity that owns and prepared them * * *. Further, there is no requirement that the person whose first-hand knowledge was the basis of the entry be identified, so long as it was the business entity's regular practice to get information from such a person." *Id.* at 1013.

Therefore, in an action to recover for losses resulting from nondelivery and slackage, the court upheld the reliability of unsigned loading tallies of unidentified stevedores and allowed their admission under Rule 803(6) to help establish the quantity of coffee actually loaded onto the ship. This factual issue was central to the case. The court indicated that the customary course of business in the cargo trade was for shoreside stevedores to prepare loading tallies. Then ship personnel would retain these tallies and rely on them to establish the loading count.

We find the comments of the *Saks* court to be particularly instructive in our analysis of the situation at bar. It is of no consequence that the records were not prepared by Calcagni. Calcagni clearly relied upon the reports that it received regularly from AAA. This is evidenced by the fact that Calcagni forwarded such information to the owner of the Excelsior project. *See Wallace Motor Sales, Inc. v. American Motors Sales Corp.*, 780 F.2d 1049, 1061 (1st Cir.1985), where the United States Court of Appeals for the First Circuit admitted records under Rule 803(6) emphasizing that an automobile dealer attested to the fact that the records were "relied upon in the conduct of [the] business." With regard to exhibit No. 9, as the *Saks* court indicated, the lack of signatures is of no consequence. Furthermore, the records contained in both exhibit No. 5 and exhibit No. 9 are dated, indicating in all like-lihood the time of preparation, thereby satisfying the requirement that the record be made at or near the time in question.

We are unable to find any indication in the record that these documents are untrustworthy. They are clearly the type of records that our Rule 803(6) seeks to encompass.

**1.** Rule 803(6) of the Rhode Island Rules of Evidence and Rule 803(6) of the Federal Rules of Evidence are identical.

■ Likewise, exhibit No. 8 falls within the purview of Rule 803(6). As we have indicated, both exhibit No. 5 and exhibit No. 9 qualify as exceptions to the hearsay rule. Exhibit No. 8 is a compilation of the information contained in exhibit No. 9. The IBEW has cited to this court the decision of the United States Court of Appeals for the Eighth Circuit in *Grogg v. Missouri Pacific Railroad Co.*, 841 F.2d 210 (8th Cir.1988). In that case the trial court had refused to admit a document on the ground that the individual who had prepared it had relied upon hearsay information in completing the document. The Court of Appeals stated, "If both the source and recorder of the information contained in [the] * * * document were acting in the regular course of * * * business, the multiple hearsay is excused by rule 803(6)." *Id.* at 213. These sentiments are applicable to the case at bar. We have already concluded that the documents were kept in the course of a regularly conducted business activity. Therefore the multiple hearsay contained in exhibit No. 8 is excused by the rule.

■ We now turn our attention to the issue concerning notice. General Laws 1956 (1984 Reenactment) § 34–28–30 provides, in pertinent part, as follows: "If any bond be given to secure payment for work done * * * such bond shall enure to the benefit of such person who does any work * * * and such person doing such work * * * may bring suit in his own name on such bond against any party thereto, notwithstanding the fact that no notice of intention under § 34–28–4 has been mailed or filed."

This court has spoken concerning this particular statute. In *Vaudreuil v. Nelson Engineering and Construction Co.*, 121 R.I. 418, 421, 399 A.2d 1220, 1222 (1979), we stated:

"When a statute is unambiguous * * * and does not contradict an evident legislative purpose, there is no room for statutory construction. * * * In such a situation, the import of a statute will not be extended. * * * Section 34–28–30 presents such a situation, where the Legislature has spoken unequivocally and precisely. The statute was clearly designed to remove several of the traditional impediments to recovery on a labor and material bond. Most significantly, the statute abrogates the privity and notice requirements."

*See also Atlantic States Cast Iron Pipe Co. v. Forte Brothers, Inc.*, 474 A.2d 1250, 1251 (R.I.1984), where this court again held that § 34–28–30 did not require notice.

We are therefore of the opinion that this issue is decided pursuant to § 34–28–30. Thus we find that IBEW is not estopped from bringing its claim despite the lack of notice.[2]

Finally we have stated, "[I]n order to reverse the judgment below we must find that the trial justice misapplied the law, or that his findings were clearly wrong, or that he misconceived or overlooked material evidence." *Camara v. City of Warwick*, 116 R.I. 395, 407, 358 A.2d 23, 31 (1976); *see also Redman v. Zoning and Platting Bd. of Review of Narragansett*, 491 A.2d 998, 999 (R.I.1985).

We find that the trial justice misapplied the law in his decision concerning IBEW's exhibit Nos. 5, 8, and 9. Each was admissible as an exception to the hearsay rule under Rule 803(6). Furthermore, the trial justice misapplied the law in his decision concerning the issue of notice. Section 34–28–30 clearly states that such notice is not required before an action may lie.

For the reasons stated, IBEW's appeal is sustained. The judgment of the Superior Court is vacated, and the record is remanded to the Superior Court for a new trial.

---

2. Furthermore, pursuant to Rule 8(c) of the Superior Court Rules of Civil Procedure, a party, in pleading to a preceding pleading, must set forth affirmative defenses, including estoppel, or those defenses are waived. Calcagni and United failed to do so in the case at bar and thus are prevented from doing so at this juncture. Accordingly we shall not address their contention that common-law estoppel should serve as a bar to IBEW's claim.