DECISION
Plaintiff, Colbea Enterprises, L.L.C. ("Colbea") appeals the passage of Warwick Ordinance No. O-07-31 ("Ordinance"), an amendment to Warwick's zoning ordinance, contending that it is inconsistent with the specific provisions and goals of Warwick's Comprehensive Plan ("Comprehensive Plan"), and therefore invalid. Defendants, the City of Warwick, the Warwick City Council, members of the City Council, and Alliance Energy Corporation ("Alliance") (collectively "Defendants") deny that the amendment is invalid. The Defendants assert that the amendment is, in fact, consistent with the Comprehensive Plan. This Court has jurisdiction pursuant to G.L. 1956 § 45-24-71.
 Facts and Travel
In 1998, the Warwick City Council ("City Council") created the Warwick Station Redevelopment District to "encourage, guide and direct development" in the area located near T.F. Green Airport. Warwick City Council Ordinance No. O-98-44. The ordinance provided for *Page 2 
two new zoning districts: the Warwick Station Intermodal District ("Intermodal") and the Warwick Station Gateway District ("Gateway"). Alliance is the owner of Warwick Assessor's Plat 323, Lots 399 and 400 (the "Property"). The Property is located on Post Road in Warwick, directly across from T.F. Green Airport. The Property currently consists of an Exxon gas station with a convenience store and a Dunkin' Donuts. Alliance filed a petition with the City Council to amend the City's zoning ordinance to change the zoning of the Property from Intermodal to Gateway. Alliance sought the zoning change to allow it to demolish the existing buildings; and erect a new gas station, including a marble and stone building to house the convenience store and Dunkin' Donuts with a drive-thru window. Transcript of Public Hearing on October 15, 2007, 10-11 (herein after "Tr.").
The Warwick Planning Board heard Alliance's petition for the zoning amendment on October 10, 2007, and voted unanimously in favor of the proposed zoning change. The Planning Board then made a favorable recommendation to the City Council on Alliance's petition. On October 15, 2007, Alliance's petition was presented before the City Council at a public hearing. Alliance offered testimony from several expert witnesses: a licensed engineer, two certified planners, and a real estate expert.
Counsel for Colbea spoke in opposition to Alliance's petition. Colbea is the owner of property adjacent to the Property, and operates a Shell gasoline station. Colbea argued that the City Council had no authority to grant Alliance's petition because it amounted to illegal spot zoning, and was inconsistent with the Comprehensive Plan.[1] The public hearing was continued *Page 3 
until November 19, 2007 at which time the City Council unanimously voted to approve Alliance's petition. Additionally, the City Council granted Alliance relief from the requirements of the zoning ordinance, including:
 1) Relief from Sec. 505.1(A) relative to reduction of the landscape buffer to 6 feet on the east side of the proposed building;
 2) Relief from Sec. 701.4 relative to entrance width on the Coronado Road side and on the Post Road side to allow curb cuts of 35 feet;
 3) Relief from 701.7 relative to parking to reduce the number of spaces from 29 to 17;
 4) The granting of a special use permit for Use 421, Gas Station (No Repairs) with Convenience Store; and
 5) Relief from Sec. 702.2(A) relative to the loading space requirement-none shall be required.
The City Council approved second passage of the petition on December 17, 2007. The Ordinance was published pursuant to the Warwick Municipal Code within ten days on December 27, 2007, and became effective twenty days thereafter.
Colbea filed a timely appeal with this Court on January 16, 2008 pursuant to § 45-24-71. Colbea is the owner of Assessor's Plat 323, lots 373 and 377, which are located directly south of Alliance's property on Post Road. Colbea has standing to appeal the City Council's enactment of the Ordinance as an aggrieved party, or alternatively as a landowner in Warwick as provided by § 45-24-71(a).
 Standard of Review
Section 45-24-71 confers jurisdiction on this Court to review an enactment of, or an amendment to, a zoning ordinance. An appeal of an enactment of, or an amendment to, a zoning ordinance may be made to this Court by an aggrieved party or by any legal resident or landowner of the municipality. Id. Section 45-24-71 provides that "an appeal of an enactment of or an *Page 4 
amendment to a zoning ordinance may be taken to the superior court for the county in which the municipality is situated by filing a complaint within thirty (30) days after the enactment or amendment has become effective." The statute further provides that the complaint must specify that the enactment or amendment does not conform with the comprehensive plan, or the manner in which it constitutes a taking. Id. This Court then conducts a review without a jury and "shall consider whether the enactment or amendment is in conformance with the comprehensive plan."Id. If the enactment or amendment is inconsistent with the comprehensive plan, the court shall invalidate the enactment or the parts of the enactment that do not conform. Id. Conversely, if the enactment or amendment is in conformance with the comprehensive plan, the court must then "determine whether the enactment or amendment works as a taking of property from the aggrieved party." Id.
A municipality's council has the power to enact or amend zoning ordinances for the purpose of promoting the public health, safety, morals, and general welfare. § 45-24-50(a). Zoning ordinance amendments must also be consistent with the municipality's comprehensive plan. § 45-24-50(b). Enacting zoning ordinances or amendments by a City Council are considered purely legislative, and enjoy a presumption of validity. Ruby Assoc., Inc. v. Ferranti, 603 A.2d 331, 332 (R.I. 1992) (citing Consolidated Realty Corp. v. Town Council of the Town of NorthProvidence, 513 A.2d 1, 2 (R.I. 1986)). The "presumption of validity includes the presumption that the zoning enactments were `in accordance with a comprehensive plan.'" D'Angelo v. Knights of Columbus Bldg.Assoc., 89 R.I. 76, 83, 151 A.2d 495, 499 (1959) (citations omitted).See also Camara v. Zoning Bd. of Review of Warwick, 116 R.I. 395,358 A.2d 627 (1976) (the initial presumption of validity also means that the amendment is presumed to have been made in accordance with the comprehensive plan). The "presumption of validity *Page 5 
can be overcome only by competent evidence." Verdecchia v. Johnston TownCouncil, 589 A.2d 830, 832 (R.I. 1991). Thus, in order to succeed on appeal under § 45-24-71, an appellant has the burden to show that "the area or areas in which the enactment or amendment does not conform with the comprehensive plan and/or the manner in which it constitutes a taking of private property without just compensation." § 45-24-71(b).
 Analysis
When considering an appeal pursuant to § 45-24-71, this Court applies a two-part analysis. First, this Court determines "whether the enactment or amendment is in conformance with the comprehensive plan." § 45-24-71(c). If the amendment is not in conformance with the comprehensive plan, this Court may invalidate the amendment or the offending part(s) of the amendment. Id. Second, if this Court finds the amendment to be in conformance with the comprehensive plan, then this Court shall determine "whether the enactment or amendment works as a taking of property from the aggrieved party." § 45-24-71(d).
 I. Consistency with the Comprehensive Plan
In this appeal, Colbea asserts that the Ordinance does not conform with the City's Comprehensive Plan because it is inconsistent with the planning goals and policies of that Plan. Colbea contends that the Gateway zone was intended to be a transitional area leading to the Intermodal zone. Specifically, Colbea argues that the zoning change of the Property from Intermodal to Gateway severed the Intermodal zone's Post Road frontage, and created an island of Gateway zoning surrounded by Intermodal. This, Colbea argues, is contrary to the vision and goals of the Comprehensive Plan. *Page 6 
Defendants point out that Colbea, as the plaintiff, bears the heavy burden of proving that the amendment is inconsistent with the Comprehensive Plan. See § 45-24-71(b). Defendants argue that Colbea has not met this burden because Colbea failed to present any evidence at the public hearing before the City Council on the proposed zoning change. Defendants additionally rely on the expert evidence presented by Alliance in its petition to the City Council to show that the Ordinance is in conformity with the Comprehensive Plan.
Alliance presented testimony and evidence from several expert witnesses at the City Council's public hearing, including two certified planners, a licensed engineer, and a real estate expert. Matthew Smith, the licensed engineer, testified that the proposed zoning change would not have an adverse impact on the health, safety and well-being of the residents or the community. (Tr. at 13.) The City Council also received a written report and testimony from Edward Pimentel stating that the proposed zoning amendment was consistent with the goals and objectives of the Comprehensive Plan as well as the Station Redevelopment Plan (also known as the Airport Plan) by ensuring the "economic or re-economic success of existing businesses along Post Road." (Tr. at 17.) Mr. Pimentel additionally testified that the zoning change from Intermodal to Gateway was consistent with the nature and character of the properties immediately surrounding the property at issue, including two other fueling stations and several vehicle rental agencies which serve the needs of the adjacent airport. Id. at 18. Another certified planner, Joseph Lombardo, supported the testimony and written report of Mr. Pimentel emphasizing that Alliance's well-designed plan is consistent with that Comprehensive Plan. Robert DeGregorio, a real estate expert, also presented a written report to the City Council; and testified that proposed zoning amendment would not devalue neighboring properties, and that it was consistent with the Comprehensive Plan.Id. at 31. The Defendants argue that Colbea did *Page 7 
not present any testimony, expert or otherwise, at the public hearing, but instead offered "a lecture devoid of essential legal substance in support of its argument."
The City Council's finding that the zoning amendment is in conformity with the Comprehensive Plan is also consistent with the unanimous vote in favor of the zoning change from Intermodal to Gateway by the Warwick Planning Department. Upon hearing much of the same testimony presented to the City Council, the Planning Department found that the proposed zone change was in compliance with the Comprehensive Plan, including the goals and policies statement, the implementation program, the land use element, and the economic development element of the Comprehensive Plan.
The City Council's acceptance of the expert testimony and any other testimony presented at a public hearing is given deference by this Court. Mendonsa v. Corey, 495 A.2d 257, 263 (R.I. 1985). This Court will not substitute its judgment for that of the City Council, particularly where the City Council's decision is clearly supported by the expert testimony presented on the record. It is clear from the record that the Intermodal and Gateway zoning districts were part of the Station Redevelopment Plan designed to serve the airport and railroad stations located in close proximity. As such, the Intermodal and Gateway zoning classifications were geared towards the special needs of these two transportation nodes, including accommodating passengers arriving in the area with car rental agencies, gasoline stations, hotels, and other commercial uses. Properties zoned as Gateway were intended to "form the gateway leading into the Warwick Station district along Post Road and portions of Airport Road." Warwick Station Redevelopment District Master Plan, 14. In this case, the Property is located on Post Road; and therefore, the change in zoning of the Property is in conformity with the Station Redevelopment Plan and the overall *Page 8 
Comprehensive Plan. Accordingly, this Court finds that the Ordinance is consistent with the Comprehensive Plan.
Colbea also contends that the zoning amendment in this case violates Warwick's Comprehensive Plan because the Land Use Map of the Comprehensive Plan was not amended to designate the Property from Intermodal to Gateway prior to the zoning change of the Ordinance. As support for this assertion, Colbea relies on a guidance memorandum issued by the Rhode Island Statewide Planning Program. The memorandum provides that zoning actions should not conflict with the applicable goals and policies of an adopted Comprehensive Plan, and should conform to land use categories, uses and intensities, as prescribed in the Land Use Element. The memorandum suggests that "this requires that proposed amendments to municipal zoning ordinances (including the zoning map)which do not conform to the municipal goals and land use policy . . . be preceded by an amendment to the Comprehensive Plan effecting changes necessary to insure conformance of the proposed change to the zoning ordinance/map." Planning Guidance Memo from Rhode Island Statewide Planning Program, 1, March 22, 2004 (emphasis in original). Colbea argues that the City Council ignored this memorandum by adopting the Ordinance without first amending its Comprehensive Plan.
Our Supreme Court has held that "a provision of the existing zoning ordinances must yield to a subsequent inconsistent amendment."Camara, 116 R.I. at 403, 358 A.2d at 29 (citing Surber v. Pearce,97 R.I. 40, 44, 195 A.2d 541, 543 (1963); Opinion to the Governor,78 R.I. 144, 149, 80 A.2d 165, 168 (1951)). A zoning ordinance will be repealed to the extent that it conflicts with a subsequently enacted zoning ordinance amendment. See Camara, 116 R.I. at 403, 358 A.2d at 29. Accordingly, Ordinance O-98-32, which created the Warwick Station Redevelopment District and amended the Comprehensive Plan must now yield to the *Page 9 
subsequently enacted Ordinance at issue in this case. Furthermore, the City Council was not required to amend the Comprehensive Plan prior to enacting the Ordinance because a preceding ordinance is only required when the new ordinance does not conform to the Comprehensive Plan.See Planning Guidance Memo, supra, at 1. In this case, the Ordinance is in conformance with the goals and land use policies of the Comprehensive Plan as previously discussed in detail; and therefore, no preceding amendment to the Comprehensive Plan was required in this case.[2]
Colbea additionally claims that the zoning amendment is inconsistent with the Comprehensive Plan because the Land Use Map, an element of the overall Comprehensive Plan, continues to call for the Property to be zoned Intermodal, and not Gateway. All municipalities in Rhode Island must adopt a comprehensive plan in accordance with the Rhode Island Comprehensive Planning and Land Use Regulations Act. G.L. 1956 §§ 45-22.2-1 to 45-22.2-14. The comprehensive plan must include certain "elements," including a "goals and policies statement" and a "land use plan element." § 45-22.2-8(c). When a municipality adopts a new ordinance or amendment, § 45-24-34(b) provides that a municipality "shall bring the zoning ordinance or amendment into conformance with its comprehensive plan [following approval] . . . not more than eighteen months after approval is given." The Rhode Island Supreme Court has noted that "[a] town is legally compelled to enact or to amend its zoning ordinance in conformity with the [] amendments [to the comprehensive plan];" however, the Court has not commented on the consequences of a municipality's failure to do so within the specified time period. Additionally, there are no statutory provisions providing sanctions or other consequences for when a municipality fails to bring its zoning ordinances and comprehensive plan into conformance. In general, a statute should be construed as mandatory when it sets forth a grant of *Page 10 
power followed by limiting language. Cabana v. Littler, 612 A.2d 678,683 (R.I. 1992). However, "[i]n those fields of administrative action where an exercise of discretion is normally intended . . . provisions granting power may be held to be directory." Norman J. Singer, 2BSutherland Statutory Construction § 57:17; see also P.J.C. Realty, Inc.v. Barry, 811 A.2d 1202, 1207 (2002) ("A municipal council has discretion in enacting an ordinance whether relating to zoning or to other subject matter"). When a statute is phrased with mandatory language, it may be considered directory in that failure to comply with a time provision contained therein will not void the action taken.Beauchesne v. David London Co., 118 R.I. 651, 660, 375 A.2d 920, 925
(1977) (citing Town of Tiverton v. Fraternal Order of Police, Lodge#23, 118 R.I. 160, 165, 372 A.2d 1273, 1276 (1977).
In this case, the Ordinance was published on December 27, 2007; and became effective twenty days later. This Court finds that less than thirteen months have elapsed since the passage of the Ordinance. Rhode Island law provides an eighteen month time period in which municipalities are to bring ordinances into conformance with the comprehensive plan. See § 45-24-34(b). Thus, the fact that the Land Use Map continues to call for the Property to be zoned as Intermodal and not Gateway is irrelevant because the City Council has eighteen months to bring the Ordinance into conformance with the Comprehensive Plan, or conversely, to amend the Land Use Map to reflect the change in zoning of the Property. See § 45-24-34(b). Even if the City Council had failed to make the appropriate changes within eighteen months, this Court finds that the eighteen month time period of § 45-24-34(b) is directory, not mandatory; and it would not provide a basis for finding the Ordinance to be inconsistent with the Comprehensive Plan. Accordingly, Colbea's argument that the Land Use Map reflects that the Property should be zoned as Intermodal and not Gateway must fail. *Page 11 
 II. Taking without Just Compensation
Upon finding that the zoning amendment is in conformance with the Comprehensive Plan, this Court then considers whether the amendment works as a taking of property without just compensation as prescribed by § 45-24-71. Colbea alleges that the enactment of the Ordinance constitutes a taking of Colbea's property without just compensation. Colbea did not present any argument on this point to the City Council or to this Court. Defendant Alliance further charges that Colbea has failed to state with specificity in what manner the ordinance constituted a taking of private property without compensation as required by § 45-24-71.
The United States Supreme Court has held that a taking of property can occur when there is no physical invasion onto the property if the government action deprives the property owner of all economically viable use of the land. Lucas v. South Carolina Coastal Council, 505 U.S. 1003,1016, 112 S. Ct. 2886, 2894 (1992). Prior to the Lucas decision, our Supreme Court articulated a similar viewpoint holding that a zoning ordinance does not constitute a taking of private property merely because the property may not be put to its must profitable use.Golden Gate Corp. v. Town of Narragansett 116 R.I. 552, 359 A.2d 321
(1976); see also Annicelli v. South Kingstown, 463 A.2d 133, 139 (R.I. 1983) (zoning ordinance that "deprives an owner of all beneficial use of his property is confiscatory and requires compensation"). Our Supreme Court has also held that a taking may occur when regulatory action that is neither a physical invasion nor a physical restraint results in a "radical curtailment of a landowner's freedom to make use of his or her land." Alegria v. Keeney, 687 A/2d 1249, 1252 (R.I. 1997).
In the instant case, Colbea failed to specify how, if at all, the Ordinance operates as a taking of its property. Colbea continues to use its property as a gasoline station, as it did before *Page 12 
the enactment of the Ordinance, and the Ordinance does not prevent Colbea from using the property as a gasoline station. Additionally, expert testimony presented by Mr. Degregorio at the City Council public hearing attested that the Ordinance would not decrease or affect the property value of the surrounding lots. Accordingly, Colbea has not been deprived of any economically viable use of its land by the enactment of the Ordinance, nor has the ordinance affected Colbea's property value. This Court finds that the Ordinance has not operated as a taking of Colbea's property; and therefore, Colbea is not entitled to any compensation.
 III. Spot Zoning
Colbea also alleges that the City Council engaged in illegal spot zoning by claiming that the Ordinance enacted by the City Council created an isolated island of Gateway zoning surrounded by Intermodal zoning. Colbea asserts that the Ordinance severed the Post Road Intermodal frontage and created an area of Gateway zoning surrounded by Intermodal zoning on three sides. The Defendants counter that spot zoning has not occurred here because other properties in the immediate area are also operated as gasoline stations, including Colbea's property, situated directly to the south of the Property.
Our Supreme Court defines spot zoning as "[a]ction by a zoning authority which gives to a single lot or a small area privileges which are not extended to other land in the vicinity." D'Angelo v. Knights ofColumbus Bldg. Ass'n, 89 R.I. 76, 83; 151 A.2d 495, 499 (R.I. 1959).See also Verdecchia v. Johnston Town Council, 589 A.2d 830 (R.I. 1991) (the term "spot zoning" applies to changes in zoning classification of relatively small tract of land, making its use incompatible with rest of area). The crucial test for determining whether a zoning ordinance amendment constitutes illegal spot zoning "depends upon whether its enactment violates a *Page 13 
municipality's comprehensive plan." Carpionato v. Town Council of NorthProvidence, 104 R.I. 490, 494-95, 244 A.2d 861, 863 (R.I. 1968). Although the Ordinance in this case affected only a small tract of land (two adjacent lots), the Property was not afforded any special privileges, nor does the zone change make the use of the Property as a gasoline station incompatible with the surrounding area because property adjacent to the Property are being operated as fueling stations (including Colbea's property which is operated as a Shell station). Furthermore, no illegal spot zoning occurred because the zoning amendment is consistent with the Comprehensive Plan as discussed above in detail.
 Conclusion
After review of the entire record, this Court finds that Colbea failed to establish that the City Council's enactment of the Ordinance re-zoning the Property from Intermodal to Gateway is inconsistent with the Comprehensive Plan. Colbea also failed to establish that the zoning amendment constituted a taking of its property requiring just compensation, or that the zoning amendment constituted illegal spot zoning. The appeal is denied and dismissed, and the decision of the City Council to change the zoning of the Property from Intermodal to Gateway is affirmed.
Counsel for the City of Warwick shall submit an appropriate judgment for entry consistent with this Decision.
[1] Counsel also discussed at the public hearing that the Warwick Zoning Board of Review previously granted a different petition allowing Alliance to replace the existing structures and also sought dimensional variances. Colbea appealed the decision of the Zoning Board to the Superior Court pursuant to G.L. 1956 § 45-24-69. The Superior Court reversed the decision of the Zoning Board holding that the Zoning Board improperly granted Alliance's application because it was in contravention of Newton v. Zoning Bd. of Review, 713 A.2d 239 (R.I. 1998), which provided that a special use permit and dimensional variances could not both be granted. Following the Superior Court decision, Alliance filed a writ of certiorari to the Rhode Island Supreme Court. The Supreme Court accepted the writ, and arguments were heard on December 1, 2008. A decision from the Supreme Court is still pending.
[2] Clearly, the purpose of a comprehensive plan is not to deprive a local government from the ability to govern itself in the future and adapt to a changing environment. *Page 1