RHODE ISLAND TOBACCO COMPANY, INC. *vs.*

HERMAN WEINTRAUB.

JANUARY 29, 1954.

PRESENT: Flynn, C. J., Baker, Condon and O'Connell, JJ.

CONDON, J.   This is an employer's petition for review of a preliminary agreement for compensation for total incapacity under the workmen's compensation act, general laws 1938, chapter 300.   After a hearing in the superior court, the trial justice filed a written decision in which he discussed the

evidence at some length and stated that the petitioner had failed to prove respondent was no longer disabled. He further expressly found that respondent was still *totally* disabled and entitled to continue to receive compensation at the agreed rate. From a decree containing those findings and denying and dismissing the petition, petitioner has appealed to this court.

The petitioner has filed eight reasons of appeal. The first five are based on alleged erroneous rulings of the trial justice in admitting or excluding certain testimony. The sixth is to the conclusion stated in his decision that the term "Wrenched back" set out in the agreement "is broad enough to include any abnormal condition in the back which might have been caused by wrenching or twisting." The seventh and eighth reasons rest substantially on the grounds that the decision is against the law and the evidence.

The petitioner has compressed its arguments in support of those reasons into two points: (1) The facts of this case bring it within the rule laid down in *Peters* v. *Monowatt Electric Corp.*, 78 R. I. 134, and since "the uncontradicted medical testimony of Dr. Silver compels the inference that the respondent has recovered from his wrenched back" he is no longer incapacitated by that injury, regardless of what his present condition may be as a consequence of any other injury not specifically stated in the preliminary agreement. (2) Even if the *Peters* case does not apply, when all the testimony and exhibits are reasonably considered in their entirety there is no legal evidence "to support an inference that the employee respondent is still totally incapacitated * * *."

On June 22, 1951 respondent received an injury to his back arising out of and in the course of his employment as a truck driver for petitioner. According to the preliminary agreement the cause of injury is stated as "Employee wrenched his back while lifting a cigarette vending machine" and the nature and location of injury is described

simply as "Wrenched back." The agreement is dated August 6, 1951 and was approved by the director of labor October 22, 1951.

After respondent was injured he was examined and treated on the same day by Dr. Caroll M. Silver, an orthopedic specialist, who later testified for petitioner in the superior court. "As a result of his examination he diagnosed the injury as "Myofascial strain of the lumbar region." Apparently respondent continued working until June 28, 1951. On that day he was again examined by Dr. Silver who found that "he showed moderate disability of the lower back, sufficient for me to tell him to stop working in order to allow for more rapid healing." The respondent did not work thereafter and according to the preliminary agreement his total incapacity commenced on June 28, 1951. During July 1951 Dr. Silver was on vacation and he had his partner, Dr. Stanley Simon, see the patient.

On July 11, 1951 Dr. Simon saw respondent and Dr. Silver testified that Dr. Simon's findings were as follows: "At that time the patient still complained of considerable pain in the back" and of "intermittent radiation down the left lower extremity of the back. At that time he showed normal straight leg raising on both sides with a negative Lasegue test on both sides. X-rays showed no evidence of recent or old injury; the bone structures were within normal limits."

Doctor Silver did not see respondent again until August 27, 1951. In the meantime Dr. Simon had respondent admitted to Miriam Hospital in Providence July 21, 1951 where he submitted to a myelogram test. As a result his case was diagnosed as herniation of an intervertebral disc, according to the hospital record. Such record also showed that he had been admitted on a provisional diagnosis of "? of ruptured disc." Apparently that diagnosis and the one following the myelogram test were made by Dr. Simon.

The respondent was discharged from the hospital July 22, 1951 and according to the discharge record his condition

at that time was "Unimproved." When Dr. Silver saw him for the third time on August 27, 1951 he complained of pain in the lower back notwithstanding he had been wearing a back support faithfully and was receiving physiotherapy. On examining him Dr. Silver found no restrictions of motion in the lumbar spine and no muscle spasm in the lumbar region. His opinion at that time was that respondent had made marked improvement but was not able to do work involving heavy lifting and repeated bending such as was entailed by his employment as a truck driver. He saw him a fourth time on October 22, 1951 and there was no change in his symptoms, but he talked of pain running down the back of his left thigh. There was some limitation of the lumbar spine and straight leg raising was partially restricted. The respondent was advised to avoid strenuous activities, to wear a back support, and to apply local heat.

On November 20, 1951 Dr. Silver again saw respondent and at that time found it difficult to evaluate his condition. But he still considered him partially disabled and advised him to seek less strenuous work than that of a truck driver. The doctor testified that he had examined the hospital record and the report of the myelogram test and had ruled out herniation of an intervertebral disc as the cause of respondent's incapacity. He admitted, however, that he was not speaking for Dr. Simon.

The respondent's next visit to Dr. Silver was on January 15, 1952. At that time he complained of constant pain in the lower back which was only partially relieved when he was in a recumbent position and became worse on any attempted activities. After examining him the doctor was of the definite opinion that he was able to do some types of work not involving bending or heavy lifting and he urged respondent to get some work of a light nature as soon as possible.

On January 29, 1952 Dr. Silver saw respondent for the last time. He then made the same complaints about pain in his

back. It was the doctor's opinion that there was "a very large functional factor in this individual" which he explained was a mental factor involved in respondent not returning to work, although he did not consider there was any malingering. He further described the factor as "may be an unconscious reaction" and also that he felt there was "some non-organic factor in the sense of not being a physical disability in the back."

The respondent testified that he still had pains in his back; that he had been wearing a back support since he was first advised to do so; that he had regularly taken the heat treatments prescribed; that he was willing to take any further treatments that would relieve him; and that he had applied at the Curative Center and expected to get treatment there. He also testified that he was willing to try light work, such as described by Dr. Silver, to see if he was able to do it; that he had applied to several employers who might have work of that kind; and that they either had no such work or were not interested in considering him for employment when they were apprised of his back condition. In addition to such efforts to get light employment, he applied at the state employment service, but at the time of the hearing in the superior court he had not received any offer of such employment through that office.

It appears from the testimony of petitioner's foreman Milton Horvitz that respondent was a steady worker who never complained about his work, and that he was conscientious and performed it unstintingly. It appeared quite clearly from such testimony that he was highly regarded as a good employee and that petitioner would be willing to take him back as a truck driver but they had no light work to offer him.

The above is a summary of the most substantial evidence in the record bearing on the principal question in this case, namely, whether respondent's back injury is still incapacitating him in whole or in part from earning wages at his

regular job or at some suitable substitute job which is presently available to him. The respondent also introduced the report of Dr. Charles S. Kubik of Boston, Massachusetts, a specialist on intervertebral disc injuries, to whom respondent had been sent by the director of labor on December 28, 1951. In his report Dr. Kubik expressed the opinion that from his examination and careful study of the myelogram test a ruptured disc was not *established* but he added that it was *not ruled out*. In other words his report is to the effect that it is possible there is a ruptured disc notwithstanding the test does not *establish* its existence. But whether respondent's back injury is due specifically to a ruptured disc is not the heart of this case. The question for the trial justice to determine on all the evidence before him was whether respondent's back injury, whatever the cause orthopedically for its persistence, was still incapacitating him totally or partially.

As we read the trial justice's decision, he did not undertake to determine on the conflicting evidence before him whether or not the back injury was due to a ruptured disc. On the contrary it appears that he expressly passed over that question when he stated: "It is not clear to the Court just what abnormal condition the respondent suffers from. But it is perfectly clear that he has not recovered in any degree from his 'Wrenched back'. That term was not defined or limited in the testimony. In the Court's opinion it is broad enough to include any abnormal condition in the back which might have been caused by wrenching or twisting."

The petitioner contends that in making this latter finding the trial justice exceeded his authority on a petition for review and based his decision on evidence of an injury not specifically described in the preliminary agreement in defiance of the rule which this court laid down in *Peters* v. *Monowatt Electric Corp.*, 78 R. I. 134. We do not agree with such contention. The petitioner in drawing the pre-

liminary agreement did not confine the description of the injury to narrow and specific limits. Apparently it was content to use more or less general descriptions of "Wrenched back" and "Employee wrenched his back" to identify the cause, nature and location of the injury.

When petitioner entered into the agreement August 6, 1951 it knew or could have known of Dr. Simon's diagnosis of July 21, 1951 noted on the hospital record. It chose for reasons known only to itself not to use the more specific orthopedic description of the injury in that diagnosis. It can hardly complain now with good reason when the trial justice accepts such general description and finds that it is broad enough to include any abnormal condition in respondent's back caused by wrenching or twisting.

We agree with that conclusion and also with his view that on the facts of this case *Peters* v. *Monowatt Electric Corp., supra,* has no application. In that case the preliminary agreement specifically described the injury as "hernia on right side." At the hearing on the petition for review the employee relied upon a *painful incapacitating condition in her leg* which her doctor testified was due to a *nerve injury and that he could not tell the cause of it.* On the evidence in the record we held that such condition was a new and different injury.

In the case at bar respondent does not rely upon a new and different injury. He claims that he is still incapacitated by the injury to his back, and by his evidence he has gone a step further and tried to identify that injury orthopedically as due to a ruptured intervertebral disc. On this petition for review it was not necessary for the employee to do this. It was sufficient for him to show to the satisfaction of the trial justice that he still has the back injury. He has done that and the only question remaining is whether there is legal evidence to support the finding that he is still *totally* incapacitated.

From our reading of the transcript and from the exhibits we find no evidence that respondent is unable to work because of his condition. The only medical evidence on this point is the testimony of Dr. Silver that respondent has shown marked improvement sufficient to enable him to do light work not requiring repeated bending or heavy lifting, but that he should not work at his old job as truck driver. The respondent did not testify that he could not do the kind of work the doctor described. On the contrary he testified he was willing to try such work and had sought to find it without success. On the other hand petitioner admitted it had no work of that kind to offer him and that it was unable to inform him where such work could be obtained.

In the circumstances we think the trial justice erred in finding that respondent was still *totally* disabled. There was no legal evidence before him to support that finding, but there was such evidence to support the finding that petitioner had failed to prove respondent was no longer incapacitated. In other words there was legal evidence that respondent is only partially incapacitated. The decree should be modified to that extent and since the evidence does not show what respondent can earn in his partially incapacitated condition he is entitled to receive the maximum compensation therefor in accordance with the provisions of the statute in such cases made and provided.

In view of our conclusion that the description of the respondent's back injury in the preliminary agreement was broad enough to include the spine and spinal canal as parts of the back, the trial justice did not err in admitting testimony with reference thereto. The reasons of appeal based on objections to such testimony, therefore, need not be discussed. We find those reasons and all other reasons of appeal to be without merit.

The petitioner's appeal is sustained in part, the decree appealed from is modified as above stated, and on February 5, 1954 the parties may present to this court for approval

a form of decree, in accordance with this opinion, for entry in the superior court.

*Francis V. Reynolds, Richard P. McMahon,* for petitioner.
*Leonard A. Kamaras,* for respondent.