[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
DECISION
This matter is before this Court on Plaintiffs' appeal of a decision of the Town of Cumberland Zoning Board of Review (Board) in favor of the defendant J.H. Lynch Sons, Inc. (Lynch) which overturned a decision of Albert F. Bruno, the Building/Zoning Official for the Town of Cumberland (Building Official). Jurisdiction in this Court is pursuant to R.I. Gen. Laws 1956 (1988 Reenactment) § 45-24-20.
FACT AND TRAVEL
On January 24, 1991 and February 27, 1991, the Building Official sent letters to Lynch informing the latter that its quarrying operation on Assessor's Plat 34, Lot 92 (Lot 92) was an encroachment on that portion of the lot zoned agricultural (A-A). Lot 92 is a large tract of land that is split zoned with approximately one half zoned industrial (I-A) and the remainder zoned agricultural (A-A).[1] Previously, Lynch's quarrying operation was confined to the area zoned I-A; however, upon commencement of operations in April 1991 it would encroach on the area zoned A-A.
Upon receipt of the Building Official's letters, Lynch appealed to the Board. On April 10, 1991, a hearing was convened at which Lynch argued that the matter was not properly before the Board because the Building Official's letters constituted a cease and desist order, the issuance of which is beyond the Building Official's authority. Lynch also argued that the Cumberland Town Zoning Ordinance is silent with respect to split lots such as that utilized on Lot 92, and that there is no clear indication of a line dividing Lot 92. Hence, Lynch asserted that the entire lot should be treated as zoned industrial. Ultimately, Lynch asserted that its quarrying operation is a preexisting nonconforming use which extends to all of Lot 92.
A number of landowners (Plaintiffs) whose property abuts Lot 92 appeared before the Board and voiced their complaints as to the adverse effects that the expansion of Lynch's quarrying operation to the portion of Lot 92 zoned agricultural has had and will continue to have on their health and property.
Thomas E. Hefner, Esq., Solicitor for the Town of Cumberland, testified that the Building Official's letter was not a cease and desist order, but rather an official notification that Lynch's operation was in possible violation of the Cumberland Zoning Ordinance, and hence the matter was properly before the Board. The purpose of the letter, Mr. Hefner stated, was not to order Lynch to halt operations, but was to give Lynch grounds and opportunity to appeal the Building Official's decision prior to commencement of its spring quarrying activities.
At the April 10 hearing, the parties offered conflicting testimony regarding whether Lynch's quarry existed prior to enactment of the Cumberland Town Zoning Ordinance. The hearing was concluded and continued until May 8, 1991. At the May 8 hearing, Plaintiffs appeared with counsel and attempted to produce further testimony and evidence. Lynch objected, arguing that the April 10 hearing was continued for decision and therefore it would be fundamentally unfair to allow Plaintiffs to introduce any new testimony. Plaintiffs argued that they were told at the first meeting that they would be allowed to testify further. After review of the April 10 transcript, the Board found in favor of Lynch and refused to allow any additional testimony or evidence.
At the conclusion of the May 8 hearing, the Board granted Lynch's appeal. The Board overturned the Building Official, and passed a motion which found that Lynch's quarrying operation constitutes a nonconforming use on Lot 92. The Board, however, did not make a ruling regarding the propriety of split lots in Cumberland and failed to make specific findings of fact in support of its final decision. Plaintiffs now appeal the Board's decision to this Court.
Standard for Superior Court Review
The Superior Court review of a zoning board decision is controlled by R.I. Gen. Laws 1956 (1988 Reenactment) §45-24-20(d), which provides in pertinent part:
 45-24-20. Appeals to superior court. — (d) The court shall not substitute its judgment for that of the zoning board as to the weight of the evidence on questions of fact. The court may affirm the decision of the zoning board or remand the case for further proceedings, or may reverse or modify the decision if substantial rights of the appellant have been prejudiced because of findings, inferences, conclusions, or decisions which are: (1) in violation of constitutional, statutory or ordinance provisions; (2) in excess of the authority granted to the zoning board by statute or ordinance; (3) made upon unlawful procedure; (4) affected by other error of law; (5) clearly erroneous in view of the reliable, probative and substantial evidence of the whole record; or arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion.
When reviewing an appeal of a zoning board decision relative to that board's findings of fact, the Superior Court ". . . is not empowered to substitute its judgment for that of the zoning board if it can conscientiously find that board's decision was supported by substantial evidence in the whole record."Apostolou v. Genovesi, 388 A.2d 821, 825 (R.I. 1978). Substantial evidence as used in this context refers to such relevant evidence that a reasonable mind might accept as adequate to support a conclusion, in an amount more than a scintilla but less than a preponderance. Casswell v. George Sherman Sand andGravel Co, 424 A.2d 646, 647 (R.I. 1981). Upon review of the entire record, it is incumbent upon this Court to determine what the Board's findings of fact were and whether they are supported by substantial evidence. Apostolou, 388 A.2d 821 (R.I. 1978).
In the instant case, the major issues remain largely unresolved. The Cumberland Zoning Board of Review issued no decision, and made no specific findings of fact. The Rhode Island Supreme Court, in addressing this situation, has cautioned:
 We have repeatedly held that zoning boards should make express findings of fact and should pinpoint the specific evidence upon which they base such findings. Additionally they should disclose the reasons upon which they based their ultimate decision because the parties in this court are entitled to know the reasons for the board's decision in order to avoid speculation, doubt, and unnecessary delay. Bastedo v. Board of Review, 89 R.I. 420; Coffin v. Zoning Board of Review, 81 R.I. 275; Winters v. Zoning Board of Review, 80 R.I. 275; Petrarca v. Zoning Board of Review, 78 R.I. 130. In these cases the court cautioned that unless zoning boards comply with the above-mentioned directions they run the risk of reversal if this court is unable to find from the record that there were good and sufficient grounds for their decision.
 Hopf v. Zoning Board of Newport, 102 R.I. 275, 288 (1967).
The relevant issues in this dispute are as follows:
(1) Whether the Building Official's letters to Lynch were a proper exercise of authority.
(2) Whether split lots are valid in Cumberland in light of the fact that the Cumberland Zoning Ordinance does not specifically address them.
(3) If split lots are valid, whether Lot 92 is a split lot, and what are its boundaries.
(4) If split lots are not valid, what is the zoning characterization of Lot 92.
(5) Whether J.H. Lynch's quarry operation is a non-conforming use with respect to Lot 92.
The first two issues listed above, regarding the Building Official's letters, and the validity of split lot designations in the absence of specific provisions in the municipal ordinance relative thereto, involve questions of law. Therefore, this Court will decide those issues herein. This matter will then be remanded to the Board for a determination of the remaining issues consistent with this Court's findings of law.
BUILDING OFFICIAL'S DECISION
This Court first addresses the Building Inspector's letters to Lynch.[2] The following is pertinent language contained in the first letter:
 Investigation of your quarrying operations reveals a possible encroachment of mining in the Agricultural A (AA) District on your property in Cumberland, Rhode Island.
 As mining in AA Districts is a violation of the Cumberland Zoning Ordinance adopted in May of 1952, consider this Official Legal Notice that mining and/or quarrying in this area is prohibited and shall not be allowed when operations resume on or about March 1st, 1991.
 If you disagree with this interpretation, you may appeal my decision to the appropriate tribunal as State law provides. . . .
 Letter of Albert E. Bruno, Building Inspector for Town Cumberland, January 24, 1991 (Emphasis in the original).
Lynch contends that this letter constitutes a cease and desist order, and thus the Building Official acted beyond the scope of his authority. See R.I. Gen. Laws 1956 (1988 Reenactment) § 45-24-7 (b) (authority to maintain actions to compel compliance with ordinance provisions rests with town or city solicitor); see also Town of Coventry v. Hickory RidgeCampground, Inc., 306 A.2d 824 (R.I. 1973) (town through its city solicitor can initiate actions to enforce local zoning ordinances); Zeilstra v. Barrington Zoning Board of Review,417 A.2d 303 (R.I. 1980) (only municipality through its town solicitor may initiate proceedings to enforce local zoning ordinances).
Plaintiffs argue, however, that the letter was merely a decision by the Building Official issued pursuant to authority granted under R.I. Gen. Laws 1956 (1988 Reenactment) § 45-24-16. Plaintiffs state that the reason that the Building Official issued these letters during the winter months while no quarrying operations were in progress was because the Town wished to give Lynch a means by which to appeal to the Board and resolve this dispute before quarrying operations commenced in the Spring.See R.I. Gen. Laws 1956 (1988 Reenactment) § 45-24-16
("[a]ppeals to the board of review may be taken by any person aggrieved by any officer, department, board, or bureau of the municipality affected by any decision of the administrative officer).
This Court agrees with Plaintiffs. The express language of the letters clearly indicates they were intended as "OfficialLegal Notice." Furthermore, the letters do not order Lynch to halt any activity. They merely state that quarrying in the AA District of Lot 92 would not be allowed. It is clear from the testimony of Mr. Hefner that the Town is aware that to order Lynch to cease and desist any quarrying activities, the Town must proceed in court through Mr. Hefner in his capacity as Town Solicitor.
Moreover, the letters do not indicate that Lynch's quarrying activity has in fact extended to the AA District of Lot 92. The letters clearly state that there exists a "possible
encroachment of mining" in the AA District of Lot 92 (emphasis added). Therefore, they could not possibly have the effect of an order prohibiting any quarrying operations. Hence, this Court finds that the Building Official's letters to Lynch do not constitute a cease and desist order, but rather constitute a decision by the Building Official, which decision Lynch subsequently properly appealed to the Board.
SPLIT LOTS
This Court now addresses the validity of split lots in Cumberland. Lynch argues that the Cumberland Town Zoning Ordinance contains no provisions relative to the treatment of split lots, and thus an ambiguity exists which warrants a finding that all of Lot 92 may be applied to its best and highest use, which in this instance is industrial (I-A). In support of this position, Lynch also relies on a statement made by Mr. Hefner, in which he stated, "the zone line does not appear in any deed or legal description and came into existence with the blind swoop of a draftsman's pen, in 1952." See Legal Opinion of Thomas E.Hefner, Cumberland Town Solicitor, January 16, 1991.
Lynch's position, however, is wholly without legal support. This Court is aware of no requirement that a municipal zoning ordinance must expressly authorize split lots in order for such lots to be utilized. Although Lynch is correct that the Cumberland Town Zoning Ordinance does not specifically sanction split lots, it does not specifically prohibit their use either. In fact, our Supreme Court has recognized the existence of a split lot in a municipality in which the city ordinance contains no provision authorizing such lots. City of East Providence v.R.I. Hospital Trust, 505 A.2d 1143 (R.I. 1986).
In that case, while addressing an appeal of a decision of the East Providence Zoning Board of Review, the court accepted as a fact that the lot at issue was a split lot, zoned partially as commercial, and partially as residential. Id. at 1144. The East Providence Zoning Ordinance, however, is silent with respect to split lots.
In the instant case, the Cumberland Town Zoning Ordinance grants the Town Council the authority to establish zoning districts. The ordinance does not, however, limit the exercise of this authority to within existing lot boundaries. See Town ofCumberland Zoning Ordinance, Art. 10, Sec. 1; see alsoKittery v. White, 435 A.2d 405 (Me. 1981) (boundary lines need not coincide with existing property lines). Therefore, this Court is not convinced that a split zone designation is invalid per se simply because the relevant municipal ordinance does not specifically address such lots.
Regarding Lynch's reliance on the Town Solicitor's statement that "the zone line does not appear in any deed or legal description and came into existence with the blind swoop of a draftsman's pen," no evidence was presented to support the contention that the zoning line at issue was not purposefully drawn. Moreover, the Cumberland Zoning Ordinance specifically provides that the boundaries of zoning districts are established upon a map which is designated "Zoning Map of the Town of Cumberland, Providence County, Rhode Island, dated May 22, 1952. A copy of which map identified by the signature of the Town Clerk is on file in the office of the Town Clerk of said Town of Cumberland." Zoning Ordinance of the Town of Cumberland, Art. I, Sec. 1. Clearly, pursuant to the express language of this section, there exists no requirement that zoning lines "appear in any deed or legal description." Therefore, Mr. Hefner's statement is inaccurate and unsupported, and Lynch's reliance thereon is entirely misplaced.
Furthermore, it is well-settled that the drawing of zoning district boundary lines is a matter of legislative discretion within the purview of authority held by the municipal legislative body. See Greely v. Ells, 527 P.2d 538 (Colo. 1974) (zoning is legislative act representing legislative judgment regarding land use); Hawkes v. Town Plan Zoning, 240 A.2d 914 (Conn. 1968) (determination of zoning boundaries is legislative function); Re Appeal of Izes, 462 A.2d 920 (Pa. 1983) ("[g]enerally, courts will not sustain challenges brought to the location of zoning boundaries since the location of such boundaries is largely a matter within the legislative discretion of the municipalities); see also R.I. Gen. Laws 1956 (1988 Reenactment) § 45-24-29 ("zoning enabling activity . . . empowered each city and town . . . to establish and enforce standards and procedures for the proper management and protection of land, air, and water as natural resources . . . and arrangement of land uses."). Moreover, the decisions of a municipal legislative body with respect to the drawing of zoning district lines is accorded the same presumption of validity as are municipal zoning ordinances. Bow Arrow Manor, Inc. v. WestOrange, 307 A.2d 563 (N.J. 1973); Camara v. City of Warwick,358 A.2d 23 (R.I. 1973). Hence, in light of the absence of a showing by Lynch to contrary, this Court finds that the division of Lot 92, as represented on the Cumberland Zoning Map, was an intentional and presumptively valid legislative action. Hence, this Court rejects Mr. Hefner's characterization of the decision to split Lot 92 as a "blind swoop of a draftsman's pen."
Therefore, pursuant to the Cumberland Town Zoning Ordinance and the well-settled law espoused above, this Court finds that the graphic representation of the official "Map of the Town of Cumberland" is legally sufficient evidence of the existence of any zone line contained thereon. Consequently, this Court will not disturb the Cumberland Town Council's placement of the zoning line that divides Lot 92.
Accordingly, this Court viewed the Official Map of the Town of Cumberland, and finds that it is clear that a division of Lot 92 exists. A distinct line exists that divides the lot, and both sections of the lot are color coded according to their zoning specifications. The district zoned agricultural is colored green, and the district zoned industrial is colored brown.
This Court does, however, take exception to one aspect of the zoning line at issue. Upon observation of the Zoning Map, this Court noticed that the zoning line at issue appears to have been drawn over. This Court shall not, nor is it this Court's function, to determine the significance of these marks. Such a determination should be made by the Cumberland Zoning Board. Hence, this issue is remanded to the Board on the issue of the precise location of the line dividing Lot 92 with respect to the markings that overlay that dividing line.
EVIDENCE AT FURTHER PROCEEDINGS
In the instant case, Plaintiffs appeared at the first hearing without legal representation. Plaintiff's now argue that since legal issues were raised at the first hearing, they should have been allowed to appear at the second hearing with counsel and offer further testimony. Plaintiffs further assert that they should have been allowed to enter testimony and pictures into evidence at the second hearing.
Upon review of the record, this Court is satisfied that notice of the April 10, 1991 hearing was given as is required under state law, and the named plaintiffs as well as other interested parties attended. All parties were given ample opportunity to express their views. At the conclusion of the first hearing there was some discussion relative to whether further testimony would be allowed at the second hearing. Upon further debate, however, a motion was passed to continue the hearing for a decision, not for further proceedings. This Court does not agree with Plaintiffs' position that since they appeared at the first hearing without legal representation and legal arguments were raised therein, they should be given an opportunity to appear with counsel at the second hearing. Plaintiffs were given notice of the first hearing and therefore were aware of the issues to be addressed therein. Had Plaintiffs desired to retain legal representation, they certainly could have done so prior to the first hearing.
Furthermore, Plaintiffs claim that they should have been allowed to present photographs of the land in dispute in order to show that Lynch's quarry is not a nonconforming use relative to Lot 92. Again, Plaintiffs were aware of the nature of the first proceeding and should have produced such physical evidence at that time. With respect to the presentation of additional evidence at further proceedings, in Roger Williams College v.Gallison, 572 A.2d 61 (R.I. 1990), our Supreme Court stated:
 We recognize that G.L. 1956 (1988 Reenactment) 45-24-20(d) confers upon the trial justice the authority to remand a case to the zoning board of review for further proceedings. This authority, however, should not be exercised in such circumstances as to allow remonstrant another opportunity to present a case when the evidence presented initially is inadequate. See Betts v. Board of Adjustment of Linden, 72 N.J. Super. 213, 178 A.2d 209 (1962). The remand for further proceedings should be based upon a genuine defect in the proceedings in the first instance, which defect was not the fault of the parties seeking the remand, see, e.g., Kramer v. Zoning Board of Review of Warwick, 98 R.I. 328, 201 A.2d 643
(1964) and Center Realty Corp. v. Zoning Board of Review of Warwick, 96 R.I. 482, 194 A.2d 671
(1963), or upon the fact that there is no record of the proceedings upon which a reviewing court may act Holliston Sand Co. v. Zoning Board of Review of North Smithfield, 98 R.I. 93, 200 A.2d 9
(1964).
Finding no genuine defect in the proceedings before the Board on April 10, 1991 or May 8, 1991, this Court will not give Plaintiffs a second opportunity to present evidence merely because they failed to do so initially.
For the reasons set forth below, this Court will, however, allow the parties to present further evidence relative to the issue of whether the Lynch's quarrying activity constitutes nonconforming use. Although no findings of fact were made, a review of the transcript of the second hearing indicates that the Board found that Lynch's quarrying constituted a preexisting nonconforming use.
The Board's finding with respect to nonconforming use, however, is erroneous for the following reasons. First, the motion that the Board passed was as follows:
 MR. BABIEC: I make a motion that J.H. Lynch Sons appeal of the Building Inspector's decision of not allowing quarrying and mining on land presently designated as Agricultural-A (AA), described as being Lot Numbered 92 on Cumberland Assessor's tax — Cumberland Assessor's Plat Number 34 at First Street in said Town of Cumberland be upheld because there's a preexisting nonconforming use of a contiguous parcel of four lots that has been used for quarrying and mining since about 1920. (Emphasis added).
 See Transcript Town of Cumberland Zoning Board,
May 8, 1991, page 39, lines 7-16.
Clearly, the Board based its decision on the fact that Lot 92 was considered as part of a parcel of land including other lots, namely lots number 127, 207, and 52. The Cumberland Zoning Ordinance, however, specifically provides that nonconforming uses are limited to the districts in which such use occurred at the adoption of the Town Zoning Ordinance, or amendments thereto. Pertinent parts of the ordinance read as follows:
 Any building structure or use or combination thereof which was lawfully in operation at the time of the original adoption of this ordinance on May 22, 1952, or at the time of the adoption of any amendment affecting permitted uses in the district where such building, etc., is located, which does not conform to the uses permitted in the district may continue to be used for the same purposes . . . (Emphasis added).
 Town of Cumberland Zoning Ordinance, Art. 6, Section I.
From the express language of the motion passed by the Board, this Court is convinced that in determining whether Lynch's activity is a preexisting nonconforming use, the Board relied on activities occurring on lots other than Lot 92. Thus, the Board's finding is affected by an error of law, and is rejected by this Court.
Furthermore, Lynch provided no evidence that any quarrying occurred on Lot 92 prior to May 22, 1952. Lynch offered the testimony of the following individuals in support of its contention that a quarry existed on Lot 92 before enactment of the Cumberland Zoning Ordinance: Everett Bonner, Jr. (employee of Lynch), Anthony F. Varone (real estate appraiser), Albert F. Bruno (Cumberland Building Official, and Thomas E. Hefner (Cumberland Town Solicitor). The testimony of these individuals is discussed below.
Everett Bonner, Jr. is employed by Lynch as a plant operator. He testified that he worked at the quarry for Lynch since 1947, and that his father worked at the quarry for T.J. Quin (predecessor to Lynch's interests) since as far back as 1938 or 1947. Lynch offers this testimony as proof that the quarry has existed on Lot 92 since 1938, well before the enactment of the Cumberland Zoning Ordinance in 1952. Lynch fails to note, however, that Mr. Bonner made no reference as to the exact lots upon which the quarry existed in 1938 or 1947. Lynch assumes that since Lot 92 is in dispute, Mr. Bonner necessarily referred to that lot. See Response Memorandum of J.H. Lynch Sons, Inc.,
C.A. 91-3789, page 22. This Court does not agree with Lynch's assumption and finds that Mr. Bonner's testimony is therefore not probative as to the existence of a quarry on Lot 92 prior to May 22, 1952.
Anthony F. Varone is a real estate appraiser who was engaged by plaintiffs David and Karen Satti, to conduct an appraisal of the real estate in the immediate area of Lynch's quarry. Upon examination by Michael F. Horan, Esq., attorney for Lynch, Mr. Varone indicated that he agreed that Lynch's quarry constitutes a nonconforming use on Lot 92. Mr. Varone, however, did not support his opinion with any evidence of the existence of a quarry on Lot 92 prior to May 22, 1952. Therefore, this Court finds that Mr. Varone's testimony also lends Lynch no support.
At a deposition, Mr. Bruno, the Building Official, indicated that in his opinion Lynch's quarry constituted a nonconforming use which extends to all of Lot 92. As with Mr. Bonner's and Mr. Varone's testimony, Mr. Bruno's testimony provided no evidence upon which his opinion was based. Mr. Bruno made no showing that his position as building official gives him some special knowledge regarding quarrying activities on Lot 92 prior to May 22, 1952. Therefore, this Court finds that Mr. Bruno's testimony is not probative as to whether Lynch's quarry is a nonconforming use relative to Lot 92.
Finally, with respect to Mr. Hefner's testimony, in his capacity as Town Solicitor, Mr. Hefner issued a Legal Opinion stating that Lynch owns four lots designated as Cumberland Tax Assessor's Plat 34 — Lots 92, 207, 127 and 52. Said lots, Mr. Hefner asserts, form one contiguous parcel which has been utilized for the purpose of quarrying and related purposes since approximately 1920. Relying on this assertion, Mr. Hefner defines Lynch's quarrying activity as a nonconforming use on Lot 92.
Mr. Hefner's position, however, is clearly erroneous. The fact that Lynch owns all four lots and treats them as one "contiguous parcel" does not mean that a nonconforming use on any one of those four lots extends to all four. Evidence must be presented showing that a quarry existed prior to May 22, 1952 within the zoning district in which Lynch contends the existence of a nonconforming use. See supra (discussion and text ofTown of Cumberland Zoning Ordinance, Art. 6, Section I relative to nonconforming uses). Mr. Hefner's opinion with respect to nonconforming use is entirely devoid of factual and legal foundation and does not support the Board's finding that Lynch's quarrying activity constitutes a pre-existing nonconforming use on Lot 92.
For the reasons set forth above, this Court finds that the testimony of Everett Bonner, Jr., Anthony F. Varone, Albert F. Bruno, and Thomas E. Hefner does not constitute reliable probative evidence that a quarrying operation existed on Lot 92 prior to May 22, 1952. Accordingly, and after a careful review of the record, this Court finds that the Board's finding that Lynch's quarrying operation constitutes a nonconforming use was based upon insufficient evidence and is therefore arbitrary, capricious, and clearly erroneous. See R.I. Gen. Laws 1956 (1988 Reenactment) §§ 45-24-20 (5) and (6). However, this Court does not go so far as to find that Lynch's quarry does not constitute a nonconforming use, but rather leaves that determination to the Board to be made on remand.
INSTRUCTIONS ON REMAND
In an effort to assist the Board in performing its functions, this Court will instruct it as to the proper findings that would be deemed sufficient. In a written decision, the Board should make express findings of fact and should pinpoint the specific evidence upon which it bases such findings. Additionally it should disclose the reasons upon which it based its ultimate decision. The Board should address the following issues:
(1) Whether Lot 92 is a split lot, and what its boundaries are.
(2) What is the zoning characterization of Lot 92.
(3) Whether Lynch's quarry operation constitutes a nonconforming use with respect to Lot 92.
For the reasons set forth above, this Court remands this matter to the Cumberland Zoning Board of Review for further proceedings consistent with the findings and suggestions made herein.
[1] Article 3, Section 6 of the Town of Cumberland Zoning Ordinance prohibits quarrying and mining operations in a zoning district designated Agricultural A uses (A-A).
Article 3, Section 5 of the Town of Cumberland Zoning Ordinance allows quarrying and mining operations in a zoning district designated Industrial A uses (I-A).
[2] The Building Official's letter dated January 24, 1991, indicated that expansion of Lynch's quarrying operation would violate the Cumberland Zoning Ordinance. The letter dated February 27, 1991, merely clarified the lot to which the January 24, 1991 letter referred.