June 23, 2022

**Supreme Court**

No. 2021-51-Appeal.
(PC 19-283)

Peter Scotti & Associates, Inc., et al.      :

v.      :

Seth Yurdin, in his official capacity      :
as a Member of the City Council of
   the City of Providence, et al.

NOTICE: This opinion is subject to formal revision before publication in the Rhode Island Reporter. Readers are requested to notify the Opinion Analyst, Supreme Court of Rhode Island, 250 Benefit Street, Providence, Rhode Island 02903, at Telephone (401) 222-3258 or Email opinionanalyst@courts.ri.gov, of any typographical or other formal errors in order that corrections may be made before the opinion is published.

Peter Scotti & Associates, Inc., et al.       :

                        v.                     :

Seth Yurdin, in his official capacity          :
as a Member of the City Council of
   the City of Providence, et al.


Present:  Suttell, C.J., Goldberg, Robinson, Lynch Prata, and Long, JJ.

**O P I N I O N**

**Justice Robinson, for the Court.**  We are confronted in this case with a contested amendment to the City of Providence Zoning Ordinance (the zoning ordinance) which would allow the construction of a new high-rise building in Providence's Knowledge District, fundamentally altering the city's skyline.  We do not take such a review lightly but embark on it with due appreciation for the contested nature of the amendment at issue and the tremendous impact our decision will have on Providence and everyone interested in this case.

The plaintiffs in the instant case, Peter Scotti & Associates, Inc. and Building Bridges Providence, seek review by this Court of a December 14, 2020 judgment of the Providence County Superior Court denying and dismissing all

claims in plaintiffs' second amended complaint. That judgment followed a decision of the Superior Court that it would not invalidate the zoning amendment at issue under G.L. 1956 § 45-24-71.[1] The plaintiffs contend before this Court that "legislative deference should not apply to a § 45-24-71 challenge" and that the amendment is inconsistent with Providence's comprehensive plan entitled "Providence Tomorrow: The Comprehensive Plan" (the Comprehensive Plan).

For the reasons set forth in this opinion, we affirm the judgment of the Superior Court.

**I**

**Facts and Travel**

The parties provided the Superior Court with stipulated facts, including numerous exhibits, with which to conduct its review in this case. In relating the

---

[1] General Laws 1956 § 45-24-71(c) provides:

"The review shall be conducted by the court without a jury. The court shall first consider whether the enactment or amendment of the zoning ordinance is in conformance with the comprehensive plan. If the enactment or amendment is not in conformance with the comprehensive plan, then the court shall invalidate the enactment or the amendment, or those parts of the enactment or amendment which are not in conformance with the comprehensive plan. The court shall not revise the ordinance to conform with the comprehensive plan, but may suggest appropriate language as part of the court decision."

- 2 -

factual background of the dispute with which we are now confronted, we shall rely on those stipulated facts.

## A

## Stipulated Facts

The defendants in this case are individuals named in their official capacities as members of the City Council of the City of Providence (collectively the City Council), as well as the I-195 Redevelopment District (the I-195 District),[2] and Jason Fane.[3]

The I-195 District owns Assessor's Plat 20, Lot 397 located at 250 Dyer Street in Providence, "also known as Parcel 42 within the I-195 Redevelopment District" (the subject parcel), as well as Assessor's Plat 20, Lot 399 located adjacent to the subject parcel, "also known as Parcel P4 within the I-195 Redevelopment District." Parcel P4 "is designated to serve as a park and green space * * *." "The Fane Organization has proposed to purchase a portion of the Subject Parcel and a portion of Parcel P4 and develop thereon a high-rise

---

[2] The I-195 District "is a statutorily created Rhode Island non-profit corporation pursuant to R.I.G.L. § 42-64.14-1, et seq. to oversee, plan, implement, and administer the development of the areas within the district," which includes the parcels of land at issue in this case.

[3] The stipulated facts also provide greater detail concerning plaintiffs. Peter Scotti & Associates, Inc. is a "commercial and residential real estate appraiser, broker, and management company with its principal place of business" in Providence; and "Building Bridges Providence is a Rhode Island non-profit corporation consisting of Providence residents * * *."

- 3 -

residential project not to exceed 600 feet to be called 'Hope Point' a/k/a 'Fane Tower.'"[4]

At the time of both the petition for the amendment of the zoning ordinance at issue and the preparation and adoption of the Comprehensive Plan, "the Subject Parcel was zoned D-1-100" with a "maximum allowable building height under the Zoning Ordinance [of] 100 feet * * *." The design concept for Fane Tower provides for a building well in excess of the one-hundred-foot limit on height prescribed in the zoning ordinance. *See infra.*

Consequently, defendants Jason Fane and the I-195 District jointly petitioned for an amendment to the zoning ordinance (the Amendment). The petition proposed an amendment which would add a new D-1 district height sub-district called D-1-600, which would permit a maximum building height of 600 feet and would change the Official Zoning Map by changing the designation of the subject parcel from D-1-100 to D-1-600. It further proposed amendments to the zoning ordinance which would allow the Downtown Design Review

---

[4] The I-195 Redevelopment District Commission "has agreed to adjust the boundaries of Parcel P4" and "subdivide Parcel 42 so as to create two parcels: (a) one parcel comprising the northerly portion of Parcel 42 and a portion of Parcel P4 to contain a total of approximately 38,375 square feet on which Fane Tower would be built and (b) a second parcel consisting of the southerly portion of Parcel 42 * * *."

Committee to waive certain requirements with respect to height, massing, and transition lines for the new building.[5]

At a May 15, 2018 hearing before the City Plan Commission with respect to the Amendment, the Planning Department provided a report which concluded that the Amendment was consistent with the Comprehensive Plan. That report noted that the Comprehensive Plan did "not designate height districts, but [left] it up to further planning processes and eventually to the City Council to determine the size, location and regulations for subdistricts." The report found that the Comprehensive Plan supported "dense residential development" and "tall buildings in Downtown * * *." It further noted that, while the Amendment was inconsistent with the Providence Downtown and Knowledge District Plan (the Knowledge District Plan), it was nonetheless consistent with the Comprehensive Plan. Consequently, it recommended that the City Plan Commission advise the City Council to that effect.[6]

---

[5] Later in the course of the approval process relative to the Amendment (before the Ordinance Committee of the City of Providence), Jason Fane and the I-195 District submitted a new petition designated "Substitute A[.]" The zoning amendments sought in Substitute A are identical to those in the original petition; the only difference between the petitions is that, as was not the case in the original petition, Substitute A contains a recitation as to how the Amendment is purportedly in conformance with the Comprehensive Plan.

[6] The report also contained conditions for the City Plan Commission to suggest to the City Council, but we need not relate them here.

However, in spite of the contents of the just-summarized report, the City Plan Commission ultimately found that the Amendment was inconsistent with the Comprehensive Plan. Specifically, it found the Amendment not to be in compliance with the following portions of the Comprehensive Plan: (1) Section 11.1, which states that "new development must take into consideration natural and man-made environmental constraints and focus on preserving those aspects of our environment that we hold dear, including * * * historic character;" (2) Section 1.2 due to the fact that the design did not complement the existing scale of buildings in the area as discussed in that section; (3) Objective BE2, which "calls for new development to complement traditional character;" and (4) Objective H2, Strategy A, since the Amendment would "create housing whose costs would not be appropriate for the financial capabilities of city residents," which would not be in conformance with the language in Strategy A. (Internal quotation marks omitted.) The City Plan Commission further found that the proposed building lacked "significant mixed use" and affordable housing; it also noted that the proposed building would encroach on a public park. In addition, it concluded that one hundred feet was the appropriate height zone for the subject parcel and that, if the city wished to effectuate a change in that regard, it should "undertake an orderly public process * * *."

On July 18, 2018, the Amendment was considered by "the Ordinance Committee of the Providence City Council * * *." The Ordinance Committee voted to recommend that the City Council deny the Amendment. On September 6, 2018, the City Council received that recommendation and opted to refer the matter back to the Ordinance Committee for "further review and discussion." (Internal quotation marks omitted.)

On October 22, 2018, the Ordinance Committee held a public hearing, which "included a presentation by the Fane team and public comment." On November 8, 2018, the Ordinance Committee voted "to recommend the Petition to the full City Council."

Subsequently, on November 15, 2018, on the occasion of the first reading, the City Council voted to approve the Amendment. On November 20, 2018, at the second reading, the City Council again voted to approve the Amendment.

Thereafter, on November 30, 2018, Providence Mayor Jorge Elorza vetoed the Amendment. However, on December 13, 2018, the City Council overrode the Mayor's veto and approved the Amendment.

The approved Amendment contained legislative findings detailing how the Amendment was in conformance with the Comprehensive Plan. In those findings, the City Council noted that the Comprehensive Plan declared that the relocating of I-195 presented "an unusual opportunity for an older built-out city to significantly

add to its downtown[.]" (Quoting the Comprehensive Plan.) It further recognized that the subject parcel was designated as a downtown/mixed-use area in the Comprehensive Plan, concerning which area the Comprehensive Plan stated that "greater residential density and building heights could be accommodated * * *." (Quoting the Comprehensive Plan.)

The City Council then found the Amendment to be in conformance with specific portions of the Comprehensive Plan. It found the Amendment to be consistent with Objective BE3, which expressed an intention "to incorporate the best urban design principles into new development patterns to achieve a higher concentration and greater mix of housing, employment and transit options in identified areas of the City * * *." (Quoting the Comprehensive Plan.) Objective BE3 also contained a corresponding strategy "to [e]valuate and identify areas where increased height limits may be appropriate." (Internal quotation marks omitted) (quoting the Comprehensive Plan). The City Council additionally noted that the Amendment was in conformance with Objective LU9, Strategy C, which expressed an intention to "[i]dentify areas that could support taller buildings and amend land use regulations to allow for greater height in those areas." (Quoting the Comprehensive Plan.)

In addition, the City Council further found the petition to be consistent with Objective H6, which included a strategy to "[a]mend the zoning to create nodes to

focus medium and high-density development * * * in transit oriented developments along high use transit lines." (Quoting the Comprehensive Plan.) The City Council also found the Amendment to be in conformance with Objective LU4 and with a corresponding strategy to "promote the development of a mixture of commercial uses that serve city-wide needs and higher density residential uses in areas designated as General Commercial/Mixed Use on Map 11.2 * * *." (Quoting the Comprehensive Plan.)

The City Council went on to find the Amendment to be "consistent with" the purposes of the Downtown District, particularly the purpose of promoting "development that encourages day and night time activities that relate to the pedestrian and promote the arts, entertainment and housing * * *." (Quoting the Comprehensive Plan.) The City Council further noted that the project would conform with the view corridors established in the zoning ordinance; it further commented that "because the Subject Parcel is uniquely situated in a former highway right of way, the impacts of a taller building are moderated by the absence of immediate proximity to historic places or structures * * *."

On January 17, 2019, "Fane and the I-195 Redevelopment District entered into a Purchase and Sale Agreement whereby the I-195 Redevelopment District agreed to sell a portion of the Subject Parcel, and a portion of Parcel P4, to Fane * * *."

**B**

**Proceedings in Superior Court**

On January 11, 2019, plaintiffs filed suit in Superior Court, seeking review of the decision of the City Council. Subsequently, they filed a second amended complaint on October 9, 2019. The second amended complaint contained two counts. Count One was an appeal to the Superior Court, pursuant to § 45-24-71, from the City Council's vote to approve the Amendment. Count Two sought a declaratory judgment.[7]

On September 6, 2019, plaintiffs moved for judgment upon stipulated facts to the effect that the Amendment was "invalid pursuant to R.I.G.L. § 45-24-71." Mr. Fane objected to plaintiffs' motion and filed a cross-motion for judgment on stipulated facts. The I-195 District joined in Mr. Fane's motion. The City Council filed a motion similar to that of Mr. Fane and ultimately joined in his motion and memorandum of law.

---

[7] The plaintiffs sought a declaratory judgment declaring that: (1) "[t]he Amendment provides the Subject Parcel privileges that are not extended to other land in the vicinity;" (2) "[t]he Amendment is inconsistent with the applicable City of Providence Comprehensive Plan;" (3) "[t]he Amendment is inconsistent with the zoning pattern in the area;" (4) "[t]he Amendment is not in the best interest of the community as a whole;" (5) "[t]he Amendment does not reasonably relate to the public health, safety, or welfare;" (6) "[t]he Amendment constitutes illegal spot zoning;" (7) "[t]he Amendment was made in violation of R.I.G.L. §45-24-30;" and (8) "[t]he Amendment is invalid."

## 1. The First Decision

On May 13, 2020, the hearing justice issued a written decision. The hearing justice began his decision by stating that the motions before him were "essentially" motions for summary judgment and that he would treat them as such. He then proceeded to address the appropriate standard of review under § 45-24-71, concluding that, contrary to plaintiffs' argument that the review should be *de novo*, in his view amendments to zoning ordinances were entitled to a presumption of validity. He stated that the presumption that the Amendment was in conformance with the Comprehensive Plan was rebuttable, but that plaintiffs had the burden of demonstrating that the Amendment was not in conformance with the Comprehensive Plan.

The hearing justice then proceeded to discuss many of the relevant portions of the Comprehensive Plan (specifically, Maps 11.1, 11.2, 11.3, Section 11.2.2, Objective LU9, and Objective BE3) before concluding that it was clear that "the Comprehensive Plan contemplates increases in building heights and densities" and "permits the establishment of sub-districts to address building height." He specifically found that "the addition of sub-districts to the D-1 zone would be in conformance with the Comprehensive Plan." The hearing justice then proceeded to detail the legislative findings of the City Council. However, he ultimately held that there were "insufficient facts" for the court to determine whether or not

plaintiffs had met their burden of rebutting the presumption that the Amendment was in conformance with the Comprehensive Plan. He specifically mentioned that he had not been provided with any of the transcripts of the proceedings before the City Council.

The hearing justice denied the cross-motions before him, stating that "[a]lthough there appear to be genuine issues of material fact as to whether Plaintiffs can demonstrate that [the] Amendment is not in conformance with the Comprehensive Plan, th[e] lack of evidence before the Court precludes it from making such a finding."

Numerous transcripts of the proceedings before the City Plan Commission, the Ordinance Committee, and the City Council were then filed with the Superior Court; and the parties filed supplemental memoranda relative to plaintiffs' motion and defendants' cross-motions for judgment on stipulated facts.

**2. The Second Decision**

On December 8, 2020, the hearing justice issued a second decision in the case, in which he stated that he was reviewing the parties' motions "in light of the expanded record." In detailing the facts, the hearing justice noted that the Knowledge District Plan "was prepared by a group of residents, business owners, institutional representatives, and the Providence Planning Department, and was intended to serve as a guideline for future development, zoning regulations, and

areas for further investigation." (Internal quotation marks omitted.) The hearing justice then reiterated his previous ruling with respect to the rebuttable presumption of validity to which the Amendment was entitled and the other determinations set forth in his May 13, 2020 decision.

The hearing justice began his analysis by addressing the significance of Maps 11.2 and 11.3 in the Comprehensive Plan. He noted that the Comprehensive Plan defines Map 11.2 as "'the official Land Use Map of the city' which 'provides the basis for the Zoning Ordinance.'" (Quoting the Comprehensive Plan.) He then noted that Map 11.2 designated the subject parcel as downtown/mixed-use and did not indicate height requirements. According to the hearing justice, Map 11.3, on the other hand, was meant to "identify 'inconsistencies between the City's existing zoning ordinance and the proposed future land use.'" (Quoting the Comprehensive Plan.) He noted that Map 11.3 showed the subject parcel as having a D-1-100 zoning designation.

Ultimately, the hearing justice determined that "in order for an Amendment to comply with the Comprehensive Plan, it must be consistent with Map 11.2 * * * which does not contain specific height designations." He noted that he had already held that the Comprehensive Plan contemplated increases in building height and allowed for height sub-districts in the downtown/mixed-use area, and he stated that it would be "inconsistent to then hold that Map 11.3 sets forth specific

height restrictions triggering a requirement to amend the Comprehensive Plan for any increase or added sub-district." He concluded that plaintiffs' evidence with respect to Map 11.3 was insufficient to rebut the presumption of the Amendment's validity.

The hearing justice then proceeded to address the issue of the Amendment's compliance with the Knowledge District Plan and Objective IMP3. The hearing justice indicated that Objective "IMP3 states that a strategy for implementation is to '[m]aintain existing uses, density and character in Areas of Change designated on Map 11.1 Areas of Stability and Change until the relevant neighborhood or specific plans and corresponding amendments to the Comprehensive Plan and Zoning Ordinance have been adopted.'" (Quoting the Comprehensive Plan.) He also noted that the Knowledge District Plan labeled zoning for the subject parcel as D-1-100. He found that neither the language of Objective IMP3 nor the zoning designation in the Knowledge District Plan rendered the Amendment inconsistent with the Comprehensive Plan because the Comprehensive Plan already took account of "the important ideas and concepts which arose from the neighborhood planning process." (Quoting the Comprehensive Plan.) He went on to note that the Knowledge District Plan itself stated that "it was meant to 'establish an inspirational vision that will spur investment and facilitate new growth and prosperity in Providence.'" (Quoting the Knowledge District Plan.) In contrast,

according to the hearing justice, the Comprehensive Plan was more than an "innocuous general-policy statement," but rather created a "binding framework or blueprint * * *." (Internal quotation marks omitted.) He further noted that it was required that the Comprehensive Plan be adopted in the same manner as an ordinance.

Ultimately, the hearing justice stated that, while the Comprehensive Plan did make reference to neighborhood plans, he did not read the Comprehensive Plan "as incorporating by reference mandatory zoning designations from the Knowledge District Plan * * *." Accordingly, he held that plaintiffs had not demonstrated that the Amendment was inconsistent with the Comprehensive Plan based on the height designations in the Knowledge District Plan. He further held that there was "at least some discussion" of the Knowledge District Plan during the Amendment approval process and that therefore there had not been a "wholesale failure to 'consider' certain factors as described in that objective."

The hearing justice then discussed plaintiffs' argument that the Comprehensive Plan was not in accordance with Objective BE2, Section 11.1, and Objective H2. The hearing justice detailed the legislative findings made by the City Council and noted that "the Amendment faced a robust and lengthy review process * * *." He then stated that a "municipality has discretion in choosing options for conforming its ordinances or land use decisions to its comprehensive

- 15 -

plan," and he held that plaintiffs had "not met their burden of rebutting the Amendment's presumption of validity by putting forth specific evidence that the Amendment is not consistent with the Comprehensive Plan." (Internal quotation marks omitted.) The hearing justice then denied plaintiffs' motion, granted defendants' motions, and stated that he would not invalidate the Amendment pursuant to § 45-24-71.

Thereafter, on December 14, 2020, an order issued, which stated that plaintiffs' motion for judgment on stipulated facts was denied and defendants' motions for judgment on stipulated facts were granted. Final judgment entered the same day, and a timely notice of appeal was filed.

## II

## Analysis

### A

### Appropriate Method of Review

Before addressing the parties' contentions before this Court, we must first address the method by which plaintiffs sought review of the judgment of the Superior Court. The plaintiffs chose to file an appeal to this Court rather than filing a petition for a writ of certiorari. We are confronted with the question of whether or not that was the correct procedural means of seeking review.

We have not heretofore specifically addressed the precise procedural issue presented in the instant case with respect to this Court's review of decisions made by the Superior Court pursuant to an appeal under § 45-24-71. Indeed, we have in the past reviewed cases that have come before us pursuant to those two different procedural routes (appeal and a writ of certiorari) without commenting on which was the appropriate route. *Compare Dallman v. Isaacs*, 911 A.2d 700, 703 (R.I. 2006) (an appeal), *with Smithfield Voters for Responsible Development, Inc. v. LaGreca*, 755 A.2d 126, 128 (R.I. 2000) (a petition for a writ of certiorari). However, after requesting that the parties address the issue at oral argument before this Court and considering the relevant statutory scheme and precedent, we are of the opinion that this issue can be easily resolved.

A review of § 45-24-71 indicates that it allows for an "appeal" to the Superior Court from an amendment of a zoning ordinance. However, it is silent as to the method by which review should be sought in this Court. We have specifically stated that "[b]ecause of the absence of a statutory provision for review by this court of the Superior Court's judgments in zoning cases, we have held that '[s]uch judgments are only reviewable in this court by common law certiorari.'" *Kirby v. Planning Board of Review of Town of Middletown*, 634 A.2d 285, 289 (R.I. 1993) (quoting *Gaschen v. Zoning Board of Review of Town of Cumberland*, 499 A.2d 419, 419 (R.I. 1985) (mem.)). What is more, it is worth noting that this

Court reviews city council actions (to which § 45-24-71 is not applicable) by means of a petition for a writ of certiorari. *See, e.g., Preservation Society of Newport County v. City Council of City of Newport*, 155 A.3d 688, 689 (R.I. 2017) (reviewing the denial of two victualing licenses by a city council pursuant to a writ of certiorari); *Cullen v. Town Council of Town of Lincoln*, 850 A.2d 900, 901-02 (R.I. 2004) (reviewing a town council's denial of an application to tie into the town's sewer system pursuant to a writ of certiorari); *Gornall v. Bray*, 644 A.2d 833, 833 (R.I. 1994) (reviewing a city council's denial of applications for licenses to operate an auto-repair shop and a used-car dealership pursuant to a writ of certiorari).

In light of that precedent, we can unequivocally state that this case is before this Court in an incorrect procedural posture; plaintiffs should have sought review through a petition for a writ of certiorari. Henceforth, when the Superior Court reviews a case pursuant to § 45-24-71, review of that Superior Court judgment must be sought in this Court through a petition for a writ of certiorari.

Nevertheless, given the fact that we have not previously addressed this issue, we shall treat this appeal as the equivalent of a petition for a writ of certiorari, and we shall deem such petition has having been granted. *See Tarbox v. Zoning Board of Review of Town of Jamestown*, 142 A.3d 191, 195 (R.I. 2016).

However, before proceeding to discuss the merits of this case, we wish to specifically address plaintiffs' argument that this case is properly here as an appeal due to the presence of a declaratory judgment count in the second amended complaint. While it is true that the decision to grant or deny declaratory relief by the Superior Court is reviewed on appeal, that is simply not the situation with which we are presently confronted. *See, e.g.*, *Estate of Hopkins v. Hopkins*, 251 A.3d 888, 889 (R.I. 2021). The second amended complaint in this case contained a count providing for an appeal pursuant to § 45-24-71 and a second count seeking a declaratory judgment. But, it is clear that the decision of the hearing justice which we are called upon to review was made under § 45-24-71. He specifically stated as much at the close of his second decision in the case—he concluded that he would not invalidate the Amendment under § 45-24-71. The hearing justice did not issue a declaratory judgment, nor did he specifically decide not to issue such a judgment. What is more, the parties' filings before this Court focus solely on the appeal to Superior Court pursuant to § 45-24-71; the declaratory judgment issue is not raised or discussed.[8] Therefore, it is abundantly clear that we are reviewing the Superior

[8] We note that plaintiffs contended at oral argument that, because the judgment from which they are appealing denied and dismissed all claims in their second amended complaint, that permitted them to seek review before this Court by means of an appeal. However, all claims were denied and dismissed because it was unnecessary for the hearing justice to rule on the declaratory judgment count in the second amended complaint following his refusal to invalidate the Amendment pursuant to § 45-24-71. The language of the judgment does not

- 19 -

Court's judgment of an appeal from an amendment to a zoning ordinance pursuant to § 45-24-71; we are not being asked to review anything with respect to the declaratory judgment count.[9]

## B

## Standard of Review Before This Court

"Our review of a case on certiorari is limited to an examination of the record to determine if an error of law has been committed." *Verizon New England Inc. v. Savage*, 267 A.3d 647, 652 (R.I. 2022) (quoting *State v. Poulin*, 66 A.3d 419, 423 (R.I. 2013)); *see also Atryzek v. State*, 268 A.3d 37, 41 (R.I. 2022). We have stated that, "[i]n addition to examining the record for judicial error, 'we inspect the record to discern if there is any legally competent evidence to support the findings of the hearing justice below.'" *Verizon New England Inc.*, 267 A.3d at 652 (quoting *Poulin*, 66 A.3d at 423); *see also Atryzek*, 268 A.3d at 41. As such, "[w]e shall not disturb the findings of the trial justice unless it is established that he or she

_____

change what was and was not decided by the hearing justice, nor does it alter what was and was not briefed before this Court.

[9] It should also be noted that some of the cases cited by the parties at oral argument, which state that "certiorari will not lie to review proceedings purely legislative or administrative in character," predate the statutory scheme at issue by many years (§ 45-24-71 was enacted in 1991) and are not relevant to the procedural issues before us in this case. *R.I. Home Builders, Inc. v. Hunt*, 74 R.I. 255, 258, 60 A.2d 496, 498 (1948); *see, e.g.*, *Town & Country Mobile Homes, Inc. v. Zoning Board of Review of City of Pawtucket*, 91 R.I. 464, 468, 165 A.2d 510, 511-12 (1960); *Siegl v. Town Council & Zoning Board of Review of North Kingstown*, 75 R.I. 502, 506, 67 A.2d 369, 370 (1949).

misconceived or overlooked relevant and material evidence or was otherwise clearly wrong." *Verizon New England Inc.*, 267 A.3d at 652 (quoting *WMS Gaming, Inc. v. Sullivan*, 6 A.3d 1104, 1111 (R.I. 2010)).

## C

### Conformance with the Comprehensive Plan

We now turn to the substantive issue before us: Did the hearing justice err in concluding that plaintiffs had failed to meet their burden of rebutting the presumption that the Amendment is in conformance with the Comprehensive Plan?

The Rhode Island Zoning Enabling Act (ZEA) "requires that zoning ordinances be developed and maintained in accordance with a comprehensive plan prepared pursuant to the Rhode Island Comprehensive Planning and Land Use Regulation Act (CPLURA)." *P.J.C. Realty, Inc. v. Barry*, 811 A.2d 1202, 1204 (R.I. 2002); *see also* § 45-24-30(a). A comprehensive plan "is a statement (in text, maps, illustrations, or other media of communication) that is designed to provide a basis for rational decision making regarding the long term physical development of the municipality." *P.J.C. Realty, Inc.*, 811 A.2d at 1204 (internal quotation marks omitted). A comprehensive plan is not an "innocuous general-policy statement," but rather such a plan "establishes *a binding framework or blueprint* that dictates town and city promulgation of conforming zoning and planning ordinances." *Town of East Greenwich v. Narragansett Electric Co.*, 651 A.2d 725, 727 (R.I.

- 21 -

1994) (emphasis added). A municipality "is legally compelled to enact or to amend its zoning ordinance in conformity" with its comprehensive plan. *Id.* at 728.

The operative statute in this case—§ 45-24-71—provides a means by which an "aggrieved party," "any legal resident or landowner of the municipality," or "any group of residents or landowners whether or not incorporated[] of the municipality" may appeal to the Superior Court from the amendment of a zoning ordinance. Section 45-24-71(a).

## 1. Applicable Standard in Superior Court

We begin our analysis by addressing what standard the Superior Court should have applied to an appeal pursuant to § 45-24-71. We must determine whether the review should have been *de novo* or whether the City Council's decision to approve the Amendment was entitled to legislative deference.

The plaintiffs contend that "legislative deference should not apply to a § 45-24-71 challenge" because "the oversight and review that § 45-24-71 contemplates does not implicate the concerns that animate legislative deference." They further posit that § 45-24-71 "does not contain any suggestion that the Superior Court should apply a deferential standard," and they point out that the Supreme Court case law stating that a presumption of validity should apply predates the enactment of the CPLURA and the ZEA. They further aver that those

two acts altered the law in "material ways." They contend that the language of § 45-24-71(c) demands a "more exacting review * * *."

In order to address plaintiffs' contentions that the hearing justice erred by according deference to the City Council's decision to approve the Amendment, we must look first to the language of the operative statutory section. Section 45-24-71(c) provides as follows:

> "The review shall be conducted by the court without a jury. The court shall first consider whether the enactment or amendment of the zoning ordinance is in conformance with the comprehensive plan. If the enactment or amendment is not in conformance with the comprehensive plan, then the court shall invalidate the enactment or the amendment, or those parts of the enactment or amendment which are not in conformance with the comprehensive plan. The court shall not revise the ordinance to conform with the comprehensive plan, but may suggest appropriate language as part of the court decision."

We have stated that "when a statutory section is clear and unambiguous, we apply the plain and ordinary meaning of the statute and we need not delve into any further statutory interpretation." *Grasso v. Raimondo*, 177 A.3d 482, 489 (R.I. 2018). "It is only when a statute is ambiguous that we apply the rules of statutory construction and examine the statute in its entirety to determine the intent and purpose of the Legislature." *State v. Diamante*, 83 A.3d 546, 548 (R.I. 2014) (internal quotation marks omitted). "We end the process of statutory construction upon concluding that a statute has a plain meaning because our ultimate goal is to

- 23 -

give effect to the General Assembly's intent and we have repeatedly observed that the plain language of the statute is the best indicator of [legislative] intent." *Id.* at 550 (internal quotation marks omitted).

Our reading of the operative statutory language leads us to the determination that the statute is silent as to the standard of review to be applied by the Superior Court. It is true that the statute makes invalidation of a zoning amendment mandatory if it is found by the Superior Court not to conform with the comprehensive plan, but it does not contain any indication of what standard is to be applied in determining whether or not a particular amendment is in conformance with a comprehensive plan. Rather, it merely instructs the Superior Court what to do once that determination is made.

This Court opined on numerous occasions prior to the 1991 enactment of § 45-24-71 that "amendments to zoning * * * ordinances[] enjoy a presumption of validity." *Johnson & Wales College v. DiPrete*, 448 A.2d 1271, 1279 (R.I. 1982); *see also Skelley v. Zoning Board of Review of Town of South Kingstown*, 569 A.2d 1054, 1058 (R.I. 1990); *Sweetman v. Town of Cumberland*, 117 R.I. 134, 146, 364 A.2d 1277, 1286 (1976); *Willey v. Town Council of Town of Barrington*, 106 R.I. 544, 557, 261 A.2d 627, 634 (1970). We also explained that "[t]his presumption of validity includes the presumption that the zoning enactments were in accordance with a comprehensive plan * * *." *D'Angelo v. Knights of Columbus Building*

- 24 -

*Association of Bristol, R.I., Inc.*, 89 R.I. 76, 83, 151 A.2d 495, 498-99 (1959) (internal quotation marks omitted); *see also Camara v. City of Warwick*, 116 R.I. 395, 407, 358 A.2d 23, 31 (1976). And we have stated that the "challengers of the amendment, have the burden of proving that it was not made in accordance with a comprehensive plan." *Camara*, 116 R.I. at 407, 358 A.2d at 31.

In addition, since the enactment of § 45-24-71, we have explained that "actions taken by a city or town council involving the amendment or repeal of zoning ordinances are purely legislative." *Maynard v. Beck*, 741 A.2d 866, 872 n.3 (R.I. 1999) (internal quotation marks omitted); *see also Willey*, 106 R.I. at 557, 261 A.2d at 634. And, "[t]his Court has consistently afforded deference to legislative enactments, which we presume are constitutional and valid." *Smiler v. Napolitano*, 911 A.2d 1035, 1038 (R.I. 2006); *see also Rhode Island Economic Development Corp. v. The Parking Co., L.P.*, 892 A.2d 87, 100 (R.I. 2006); *In re Advisory Opinion to House of Representatives (Casino II)*, 885 A.2d 698, 702 (R.I. 2005); *Parkway Towers Associates v. Godfrey*, 688 A.2d 1289, 1293 (R.I. 1997). We have also stated that legislative rules "have the force and effect of law, and the party challenging a legislative rule must rebut the presumption of validity [which] attaches to [the] * * * rule." *Chariho Regional School District v. Gist*, 91 A.3d 783, 791 (R.I. 2014) (internal quotation marks omitted). What is more, we have "recognize[d] that a municipality has discretion in choosing options for

conforming its ordinances or land use decisions to its comprehensive plan * * *."

*N & M Properties, LLC v. Town of West Warwick ex rel. Moore*, 964 A.2d 1141, 1147 (R.I. 2009).

When faced with a statute that is silent as to this issue, we see no error of law in the hearing justice's decision not to deviate from this Court's consistent precedent on this issue.[10] Indeed, we note that the General Assembly "is presumed to be aware of the state of existing relevant law when it enacts or amends a statute" and thus, presumably, was aware of the state of the law with respect to legislative deference when it enacted the ZEA and the CPLURA. *P.J.C. Realty, Inc.*, 811 A.2d at 1206. The General Assembly chose not to provide for a different, less deferential standard of review in § 45-24-71(c).[11] We shall not now read one into that statutory section in contravention of our consistent precedent. *See Shine v. Moreau*, 119 A.3d 1, 10 (R.I. 2015) ("[I]t is not within our power to read language into a statute which the General Assembly chose not to put there."); *see also Dodd*

---

[10] The plaintiffs rely heavily on a decision of the Superior Court in the case of *Sullivan v. Carney*, No. WC 05-744, 2008 WL 693616 (R.I. Super. Ct. Feb. 20, 2008), which came to the opposite conclusion with respect to the standard of review to be applied pursuant to cases under § 45-24-71. *Sullivan*, 2008 WL 693616, at * 12. However, we are not bound by that decision, nor do we find it to be persuasive.

[11] Our conclusion is not altered by plaintiffs' contention that the enactment of the ZEA and the CPLURA materially altered the state of the law. The enactment of those statutes did not change this Court's consistent precedent, nor did it change the fact that § 45-24-71 does not expressly provide for a less deferential standard of review.

*v. United States*, 545 U.S. 353, 359 (2005) (stating that a court is simply "not free to rewrite [a] statute that Congress has enacted").

We shall proceed to address the specific contentions of plaintiffs with respect to alleged error on the part of the hearing justice, keeping in mind the hearing justice's determination that the Amendment was due legislative deference.

### 2. Map 11.3

The plaintiffs assign error to the hearing justice in not finding persuasive their argument that Map 11.3 was proof that the Comprehensive Plan establishes a maximum height on the subject parcel of one hundred feet and that the Amendment therefore is not in conformance with the Comprehensive Plan. They add that Map 11.3 does not contemplate any future zoning change for the subject parcel.

They further contend that Map 11.3 is meant to "designate those areas wherein the Comprehensive Plan contemplates future zoning changes, and those that are to remain the same" and that the hearing justice found it not to be binding "without any plausible discussion." Lastly, they further aver that "[c]ompletely absent from the Record is any consideration of Map 11.3," and they add that "counsel for Fane incorrectly represented during the approval process that the Comprehensive Plan did not contain height designations."

Section 45-22.2-6(b)(2)(ii) requires that a comprehensive plan include a map providing for "[f]uture land use illustrating the desired patterns of development, density, and conservation as defined by the comprehensive plan[.]" It is clear from a review of the Comprehensive Plan that this describes Map 11.2. The Comprehensive Plan titles Map 11.2 "Future Land Use" and states that that map "depicts specific land use designations for each area of the city and is the Official Land Use Map." It further states that Map 11.2 "provides the basis for the Zoning Ordinance."

Section 45-22.2-6(b)(2)(iii) requires that a comprehensive plan include a map identifying "discrepancies between future land uses and existing zoning use categories." It is clear to us that this statutory section refers to Map 11.3, which is entitled "Future Zoning Change Areas Map." The Comprehensive Plan itself notes that "there are inconsistencies between the City's existing zoning ordinance and the proposed future land use," and it provides that those inconsistencies are identified in Map 11.3. Map 11.3 does designate the subject parcel as D-1-100 and does not include it in a "proposed zoning map change area[.]"

After extensive review of the Comprehensive Plan, the two maps in question, and the record in this case, we are of the opinion that the hearing justice did not err in concluding that plaintiffs' assertions with respect to Map 11.3 were not sufficient to rebut the presumption of validity of the Amendment. The

Comprehensive Plan itself states that Map 11.3 is meant only to illustrate discrepancies between current zoning and proposed future land use; rather, it is Map 11.2 which "illustrat[es] the desired patterns of development, density, and conservation," § 45-22.2-6(b)(2)(ii), and is the "Official Land Use Map." It does not appear to us, after reviewing the Comprehensive Plan, that Map 11.3 was intended to provide a specific height requirement for all future zoning of the area in question.

Our conclusion in this regard is buttressed by the fact that Map 11.2 designates the subject parcel as "Downtown/Mixed Use" and by the fact that Table 11.2 specifically notes that in downtown/mixed-use areas, "[i]n order to promote economic development while maintaining compatibility between uses, sub-districts may be established to address building height * * *." The Comprehensive Plan also states that, in mixed-use areas, "greater residential density and building[] heights could be accommodated to create a more efficient pattern of development and protect the character of the residential neighborhoods." It would be illogical to interpret Map 11.3 as providing a cap on building height while Map 11.2—the Official Land Use Map—and Table 11.2 specifically allow for sub-districts to address building height in the same area.

What is more, the Comprehensive Plan refers on numerous occasions to the possibility of having greater building heights in some areas. Objective LU9,

Strategy C articulates an objective as being to "[i]dentify areas that could support taller buildings and amend land use regulations to allow for greater height in those areas" and Strategy D articulates an objective as being to "[a]mend regulations as needed to establish incentives for greater height and density in exchange for affordable units, public space investment, support for neighborhood amenities, sustainable design, etc." In addition, Objective BE3, Strategy A articulates an objective as being to "[i]dentify and evaluate those areas of the city where increased building height and density can be accommodated, allowing for compatible transition to surrounding areas."

The plaintiffs contend that, by not reading Map 11.3 to require a height limit of one hundred feet for the subject parcel, the hearing justice violated the canon of statutory construction to the effect that "[t]he Legislature is presumed to have intended each word or provision of a statute to express a significant meaning, and the Court will give effect to every word, clause, or sentence, whenever possible." *Koback v. Municipal Employees' Retirement System of Rhode Island*, 252 A.3d 1247, 1251 (R.I. 2021) (internal quotation marks omitted). However, we note that that canon of construction is not absolute, and to give it the effect which plaintiffs seek would be to interpret Map 11.3 without reference to the context of the rest of the document of which it is a part, without any evidence that it was intended to be so interpreted. *See Ryan v. City of Providence*, 11 A.3d 68, 71 (R.I. 2011) (stating

- 30 -

that "it would be foolish and myopic literalism to focus narrowly on one statutory section without regard for the broader context" and that "[w]e * * * consider the entire statute as a whole; individual sections must be considered in the context of the entire statutory scheme, not as if each section were independent of all other sections") (internal quotation marks omitted).

Accordingly, the hearing justice did not err in determining that plaintiffs' "evidence as to Map 11.3" was "insufficient to rebut the presumption of validity" of the Amendment.[12]

### 3. The Knowledge District Plan

The plaintiffs contend that the Amendment is not in conformance with the Comprehensive Plan because the height change in the Amendment is violative of what is provided for in the Knowledge District Plan. They aver that the Comprehensive Plan places "heavy emphasis upon adherence with the planning processes for defined areas of the city, and in particular, the Knowledge District

---

[12] We pause to address plaintiffs' contention that Map 11.3 was not discussed during the amendment process and was not given "plausible discussion" by the hearing justice. The plaintiffs make the contention with respect to the amendment process in a summary fashion in their brief without any further discussion of the issue or how it affects this Court's review. They simply go on just to state that "Fane incorrectly represented during the approval process that the Comprehensive Plan did not contain height designations." However, our review of the Comprehensive Plan with respect to the subject parcel leads us to the conclusion that it indeed does not contain height designations. Additionally, it is abundantly clear from a review of the hearing justice's decision that he did in fact thoroughly address plaintiffs' contentions with respect to Map 11.3.

Plan." They specifically rely on the fact that the Comprehensive Plan states that the Knowledge District Plan "will create a model development code for the area" and "inform the rezoning of all of Downtown." They further rely on portions of the Comprehensive Plan which state that neighborhood plans should be used to define building height, and they note that Objective IMP3 lists as a "mandatory * * * consideration" with respect to zoning amendments "[c]onsistency with the principles and design vision of adopted specific plans in Areas of Change." (Quoting the Comprehensive Plan.) The plaintiffs also take issue with the hearing justice's determination that the Knowledge District Plan is aspirational.

It is undisputed that the Knowledge District Plan labels the subject parcel, in Figure 7-4 "New Downtown Zoning Map," as being within an area zoned D-1-100. It is also true that the Comprehensive Plan does on numerous occasions discuss the importance of neighborhood plans. The Comprehensive Plan mentions that the Knowledge District Plan would "create a model development code" for the area in question and would "inform the rezoning of all of Downtown." Objective LU1, Strategy A of the Comprehensive Plan provides that neighborhood plans should be used to review "[d]evelopment patterns," preservation of "[s]ignificant buildings and view corridors," and "[p]otential redevelopment opportunities[.]" Objective LU2, Strategy A states that neighborhood plans should be used to review "the

preferred pattern and character of development including mass, scale, building height, design, use, and density," and Strategy B further states that any update to regulations should "[r]eflect design vision adopted as part of the neighborhood plans."

Objective IMP3, Strategy D of the Comprehensive Plan states that, when amending the zoning ordinances, the City should evaluate the "[c]onsistency with the principles and design vision of adopted specific plans in Areas of Change * * *." It is plaintiffs' contention that this section of the Comprehensive Plan is mandatory and intentionally incorporates the Knowledge District Plan into the Comprehensive Plan.

However, upon reflection, we simply cannot agree. While the Comprehensive Plan certainly references neighborhood plans and their role in future development in Providence, plaintiffs have not pointed us to any language which specifically incorporates the Knowledge District Plan into the Comprehensive Plan. None of the just-discussed language remotely evidences an express intention to incorporate the Knowledge District Plan into the Comprehensive Plan to such an extent that the failure to adhere to the height restrictions in Figure 7-4 in the Knowledge District Plan would be enough to render the Amendment invalid.

What is more, the Comprehensive Plan itself states, in the Foreword, that in updating the Comprehensive Plan, the Department of Planning and Development already "incorporate[d] the important ideas and concepts which arose from the neighborhood planning process * * *." The Knowledge District Plan states that it is "an *inspirational* vision that will spur investment and facilitate new growth and prosperity in Providence."[13] (Emphasis added.) The Knowledge District Plan labels its zoning plan as "Framework Recommendations for Zoning;" it goes on to state, in the "Implementation" section, that it provides "the conceptual structure and a long range vision for the redevelopment of the district" and that its "authority comes only from the power of its ideas and the collaboration and support of the public officials and private stakeholders that went into the creation of those ideas." Additionally, it is worth noting that the Comprehensive Plan must go through an exhaustive statutorily prescribed development and approval process—something that was certainly not required for the formulation of the Knowledge District Plan. *See* §§ 45-22.2-8 and 45-22.2-9; *see also West v. McDonald*, 18 A.3d 526, 539 (R.I. 2011) ("A municipality must adopt its comprehensive plan in the same manner in which it adopts ordinances.").

---

[13] We further note that the Knowledge District Plan provides that "[o]ne of the many goals for this plan is to provide for the full development potential of [the former I-195] land to attract investment, which will drive long-term growth for the entire city of Providence."

For these reasons, in our judgment, the hearing justice did not err in ultimately concluding that he was "not persuaded" that plaintiffs had met their burden of rebutting the presumption of validity of the Amendment as a result of it not having complied with the Knowledge District Plan, even in light of the numerous references to neighborhood plans in the Comprehensive Plan. Without language expressly incorporating the Knowledge District Plan into the Comprehensive Plan (and being mindful of some of the language in both plans suggesting the contrary), we are unable to come to any other conclusion.

The plaintiffs further aver that the Comprehensive Plan "requires that the City '[m]aintain existing uses, density and character in Areas of Change * * * until relevant neighborhood or specific plans and corresponding amendments to the Comprehensive Plan and Zoning Ordinance have been adopted;'" and, according to plaintiffs, the Comprehensive Plan provides that the term "character" includes allowable building height. The plaintiffs posit that the "failure to seek an amendment to the Comprehensive Plan or Knowledge District Plan, consequently, means that the Amendment is invalid."

The plaintiffs accurately represent what is contained in Objective IMP3, Strategy C in the Comprehensive Plan—"[m]aintain existing uses, density and character in Areas of Change * * * until the relevant neighborhood or specific plans and corresponding amendments to the Comprehensive Plan and Zoning

Ordinance have been adopted."[14]  However, we note that the Knowledge District Plan was published in 2012—before the final Comprehensive Plan; and the Comprehensive Plan "incorporate[d] the important ideas and concepts which arose from the neighborhood planning process * * *."  What is more, we simply cannot read the just-quoted language to require amendment to the Comprehensive Plan for any zoning amendment that may not be in accordance with the Knowledge District Plan.  *See Grasso*, 177 A.3d at 489 ("When a statutory section is clear and unambiguous, we apply the plain and ordinary meaning of the statute and we need not delve into any further statutory interpretation.").  Thus, Objective IMP3, Strategy C does not dissuade us from the conclusion that the Comprehensive Plan does not incorporate the Knowledge District Plan.

Finally, the plaintiffs contend that "entirely lacking from the approval process was any consideration of the Knowledge District Plan," particularly by the Ordinance Committee and the City Council.  However, the record reflects that the Knowledge District Plan was referenced (albeit not at any great length) at various times throughout the approval process relative to the Amendment before the City Plan Commission, the Ordinance Committee, and the City Council.

The Planning Department Report noted that the Knowledge District Plan "recommend[ed]" D-1-100 for the subject parcel and that the Amendment was

---

[14]    It is also true that the Comprehensive Plan states that the "preferred pattern and character of development" includes building height.

inconsistent with the Knowledge District Plan (but consistent with the Comprehensive Plan). This conclusion was reiterated by planning officials at some of the public hearings on the Amendment. In particular, before the City Plan Commission, Robert Azar, Deputy Director of the Providence Department of Planning and Development, stated that the Knowledge District Plan was "separate" from the Comprehensive Plan, was "not incorporated" into the Comprehensive Plan, and was not adopted by the City Council. Bonnie Nickerson, the Director of the Department of Planning and Development, conceded before the City Plan Commission that the Amendment was inconsistent with the Knowledge District Plan, but she added that it was nonetheless consistent with the Comprehensive Plan. Conversely, the Knowledge District Plan was also referenced in a comment by Sam Shamoon, a "professional land use and zoning expert" retained by the attorney for two entities opposed to the Amendment. Mr. Shamoon testified that the Knowledge District Plan and the Comprehensive Plan were "companion documents" and together "constitute the comprehensive plan."

Accordingly, it is clear to this Court that the amendment approval process was not "entirely lacking" in discussion of the Knowledge District Plan. Although it was not extensively discussed, it was certainly referred to on several occasions. Given the language of the Comprehensive Plan and the Knowledge District Plan that we have just discussed, we do not consider it to have been error on the part of

the hearing justice to have held that plaintiffs had failed to meet their burden to rebut the presumption of validity of the Amendment based on the supposed failure of consideration of the Knowledge District Plan during the approval process.

## 4. Remaining Issues

The plaintiffs further contend that the Amendment violates additional sections of the Comprehensive Plan including those on which the City Plan Commission relied in its conclusion that the Amendment was not in conformance with the Comprehensive Plan: Section 11.1; Objective BE2; and Objective H2, Strategy A.

Section 11.1 states that "[n]ew development must take into consideration natural and man-made environmental constraints and focus on preserving those aspects of our environment that we hold dear, including * * * historic character." Objective BE2 calls for promoting "design innovation and architectural diversity while preserving Providence's traditional character." And Objective H2, Strategy A expresses an intent to "[p]rovide for diversity in the type, density and location of housing within the city to provide an adequate supply of safe, sanitary housing at price levels appropriate to the financial capabilities of city residents." However, after giving these sections of the Comprehensive Plan due consideration, they do not alter our conclusion that the hearing justice did not err.

The Amendment at issue was accorded, as the hearing justice observed, "a robust and lengthy review process * * *." At the conclusion of those proceedings, the City Council voted to approve the Amendment and made numerous legislative findings as to how the Amendment conformed with the Comprehensive Plan. For example, it found that the subject parcel was designated as downtown/mixed-use and that the Comprehensive Plan stated that in such areas "greater residential density and building heights could be accommodated * * *." The City Council further found the Amendment to be in conformance with Objective BE3; Objective LU9, Strategy C; Objective H6; and Objective LU4.

While this case is by no means simple and there appear to be sections of the Comprehensive Plan which could lead to different interpretations, we have recognized "that a municipality has discretion in choosing options for conforming its ordinances or land use decisions to its comprehensive plan * * *." *N & M Properties, LLC*, 964 A.2d at 1147. What is more, when the Comprehensive Plan is considered as a whole, taking into account all the relevant sections of the Comprehensive Plan to which the parties have directed this Court's attention, we are unable to say that the hearing justice committed an error of law or was without the support of legally competent evidence when he concluded that plaintiffs had

failed to meet their burden to rebut the presumption that the Amendment was valid.[15] *See Verizon New England Inc.*, 267 A.3d at 652.

Before concluding, we pause to note that we are tasked in this case with evaluating the Amendment and the Comprehensive Plan through the prism of the applicable standard of review; we have looked to whether or not the hearing justice committed clear error or lacked legally competent evidence to support his conclusion. *See id.* This Court follows where the law leads; and, in this case, it leads us to the conclusion that we must affirm the judgment of the Superior Court.

## III

## Conclusion

For the reasons set forth in this opinion, we affirm the judgment of the Superior Court. The record may be remanded to the Superior Court with our opinion endorsed thereon.

---

[15] The defendants contend before this Court that plaintiffs' claims have become "moot by reason of [the Rhode Island] Special Economic District Enabling Act of 2019[.]" Given our holding in this case, we need not address the application of that act to the facts of this case. *See Grady v. Narragansett Electric Co.*, 962 A.2d 34, 42 n.4 (R.I. 2009) (referencing "our usual policy of not opining with respect to issues about which we need not opine").



# STATE OF RHODE ISLAND

## SUPREME COURT – CLERK'S OFFICE
Licht Judicial Complex
250 Benefit Street
Providence, RI  02903

## OPINION COVER SHEET

| | |
|---|---|
| **Title of Case** | Peter Scotti & Associates, Inc., et al. v. Seth Yurden, in his official capacity as a Member of the City Council of the City of Providence, et al. |
| **Case Number** | No. 2021-51-Appeal. (PC 19-283) |
| **Date Opinion Filed** | June 23, 2022 |
| **Justices** | Suttell, C.J., Goldberg, Robinson, Lynch Prata, and Long, JJ. |
| **Written By** | Associate Justice William P. Robinson III |
| **Source of Appeal** | Providence County Superior Court |
| **Judicial Officer from Lower Court** | Associate Justice Brian P. Stern |
| **Attorney(s) on Appeal** | For Plaintiffs: <br><br> Armando E. Batastini, Esq. |
| | For Defendants: <br><br> William R. Landry, Esq. <br> Patrick J. McBurney, Esq. <br> Mark W. Freel, Esq. |